NICHOLAS v. MAXWELL MOTOR CORPORATION.

1. DAMAGES—EVIDENCE—NEGLIGENCE—WITNESSES.
In an action by a mother as administratrix of her 15-year old son's estate for damages caused by personal injuries resulting in his death when the bicycle on which he was riding was struck by defendant's automobile, there was

¹Damages, 17 C. J. § 332.

no prejudicial error in allowing the plaintiff to state that she had six living children, in view of the explicit instructions of the trial court as to the matters the jury should consider in fixing plaintiff's damages.

2. Evidence—Witness May State What He Saw.

A witness who came upon the scene soon after the collision and helped pick up the deceased was properly permitted to testify that there was blood on the boy's head and blood running from his mouth and nose, and that his own hands and clothing became bloody from contact with the boy's body, since he merely stated what he saw at the time.

3. Trial—Unresponsive Answer Not Prejudicial.

Where defendant's counsel, on cross-examination, asked a witness if he knew who removed the boy, injured in a collision with an automobile, from one hospital to another, his answer, for which plaintiff's counsel was in no way to blame, that he understood it was the insurance company, *held*, not prejudicial, in view of the fact that the answer was at once stricken out and the jury cautioned that they must entirely disregard it, and they, on being questioned, assured the trial court that they would treat the case as though said answer had never been given.

4. Death—Evidence—Damages—Evidence as to Probable Earnings of a Minor Admissible.

Proof that the deceased, when not in school, had been paid $12 per week by witness, from whom he was learning the carpenter's trade, and that in four or five years he might have become a journeyman carpenter, whose average earnings during the last four years had been from 90 cents to one dollar per hour, *held*, admissible.

5. Same — Life Expectancy — Present Worth of Future Earnings.

There was no error in the admission of testimony as to the probable earnings of deceased, had he lived, and as to his expectancy of life, and the present worth of such loss to his estate from the time he would have reached the age of 21 years, where the court fully and fairly instructed the jury as to the use they should make of said proof.

²Evidence, 22 C. J. § 711 (Anno); ³Trial, 38 Cyc. p. 1479; ⁴Death, 17 C. J. §§ 201, 246, 250; ⁵Id., 17 C. J. §§ 201, 239; L. R. A. 1916C, 820; 8 R. C. L. 673, 835; 2 R. C. L. Supp. 637; 6 R. C. L. Supp. 520.

6. SAME—DAMAGES—EXCESSIVE VERDICT—REMITTITUR.
   Although a judgment for $20,000 for damages caused to the
   estate of a 15-year old boy by his negligent killing con-
   tained an allowance for pain and suffering, it is *held*,
   under the circumstances, excessive, and affirmed only on
   condition that plaintiff remit all in excess of $15,000.
   STEERE, FELLOWS, and WIEST, JJ., concurring on condition
   that all in excess of $10,000 be remitted.

Error to Wayne; Murphy (Alfred J.), J.   Sub-
mitted January 12, 1927.   (Docket No. 77.)   De-
cided April 1, 1927.

Case by Clotilda Nicholas, administratrix of the es-
tate of Rudolph Nicholas, deceased, against the Max-
well Motor Corporation for the negligent killing of
plaintiff's decedent.   Judgment for plaintiff.   De-
fendant brings error.   Affirmed, conditionally.

*Stevens T. Mason,* for appellant.

*Walter M. Nelson,* for appellee.

SHARPE, C. J.   The proof offered on the part of
the plaintiff tended to establish the following facts:
Rudolph Nicholas, the deceased, aged a few days less
than 15 years, and four other boys were riding on
bicycles, going east, in single file, on a path in the dirt
shoulder along the southerly side of the concrete pav-
ing on the Nine-mile road near Gratiot avenue, in the
city of Detroit, on the evening of August 1, 1924.
It was yet possible to see without lights.   A Hup-
mobile approached them from the east, followed by
a Chrysler sedan, owned by the defendant, and driven
by one of its employees.   When the former was about
opposite the boys, the latter car, driven at a high rate
of speed, attempted to pass it, and in doing so was so
negligently operated that it swung over into the path
and struck the bicycle on which the deceased was

⁶Appeal and Error, 4 C. J. § 3139; Death, 17 C. J. § 235.

riding, inflicting such severe injuries on him that he died from the effect thereof three days later.  His mother, as administratrix of his estate, brought this action to recover the damages suffered by his estate thereby.  She had verdict for $20,000.  Defendant reviews the judgment entered thereon by writ of error.  The assignments will be considered in the order discussed by counsel for appellant.

1. The plaintiff, the mother of deceased, was permitted, over the objection of defendant, to state that she at that time had six living children.  In overruling the objection that it was immaterial how many children she had, the court said:

"So far as the main issue of the case is concerned, that is true; but the jury are entitled to know the antecedents of the witness."

We fail to see how the answer of the witness tended in any way to prejudice the rights of the defendant, or to increase the verdict under the very explicit instructions of the court as to the matters the jury should consider in fixing plaintiff's damages.  *Olivier* v. *Railway Co.*, 138 Mich. 242.

2. A witness who came upon the scene soon after the collision, and helped pick up the deceased, testified that there was blood on his head and blood running from his mouth and nose.  He was permitted, over objection, to state that his own hands and clothing became bloody from contact with the boy's body.  He merely stated what he saw at the time.  The ruling was without error.

3. The deceased was at first taken to a hospital in Mt. Clemens, and later removed to one in Detroit. While in the former, he was attended by Dr. Allen, who testified:

"He was seriously injured, but we didn't consider that he was going to die as soon as he did.

"*Q.* He was removed at the request of others than the plaintiffs here?

"*A.* He was removed against my will; I told them he might die."

On cross-examination by defendant's counsel, he was asked:

"*Q.* You don't know who removed him?

"*A.* I don't know, but I understood it was the insurance company did it."

The answer was at once stricken out at the request of defendant's counsel. The court then cautioned the jury that they must entirely disregard the answer, and asked them if they would be able "to treat this case as though the last answer were never given," and, on being assured by the answers of the jury that they would, he ordered the trial to proceed.

Plaintiff's counsel was in no way to blame for the answer given. While not responsive to the question asked, it was in a way invited by it. We need not repeat what has been several times said by this court relative to the injection of such statements into the record. *Ward* v. *De Young,* 210 Mich. 67; *George* v. *Jeffries,* 222 Mich. 64; *Donnelly* v. *Johnston Manfg. Co.,* 227 Mich. 376; *Sutzer* v. *Allen,* 236 Mich. 1. It cannot be presumed that prejudice resulted, particularly in view of the care exercised by the court to eliminate from the minds of the jury any consideration of the answer given.

4. A witness named Hennigan, for whom the boy worked when not attending school, and from whom he was learning the carpenter's trade, testified that he was paying deceased $12 per week, and that in four or five years he might have become a journeyman carpenter. He was then, over objection, permitted to state that the average wage of such carpenters during the last four years had been from ninety cents to one dollar per hour.

A somewhat similar question was presented in *Love v. Railroad Co.*, 170 Mich. 1. In that case a child of tender years was injured and afterwards died, owing to injuries due to the negligence of an employee of defendant. Proof quite similar to that here received was introduced over defendant's objection, and error assigned thereon. This court, speaking through Mr. Justice BLAIR, said:

"The fact that the child's death has occurred before he has become a wage-earner does not foreclose inquiry as to the probable value of his services for the years ensuing his death. * * *

"To enable the jury to determine the probable earning capacity of the child for the period of his probable life after arriving at the age of 21, a wide latitude must necessarily be allowed in the admission of testimony as to the child's status and future prospects and the vocations and their remuneration which might reasonably be expected to be open to him. We are therefore of the opinion that the rulings complained of were not erroneous."

Many cases are therein cited to sustain this holding. Under it, the proof submitted was admissible.

5. Based upon the probable earnings of the deceased, had he lived, as indicated by the testimony received, proof was offered as to the probability of life of the deceased, and the present worth of such loss to his estate, from the time he would have reached the age of 21 years. Counsel, in support of the assignment of error in admitting such proof, says:

"This method of figuring placed in the minds of the jury a figure which was based on the purest sort of speculation."

But, as was said in the *Love Case, supra:*

"From the nature of the case, the amount of the damages cannot be estimated with certainty either as to the element of pain and suffering or the element of future earnings after the age of 21; but this does not,

as we have repeatedly held, deprive the injured person of all damages."

The purpose of the testimony and the computation made was to aid the jury in fixing a sum which would fairly compensate the estate for the loss sustained. The trial court fully and fairly instructed them as to the use they should make of this proof. There was no error in its admission.

6. The jury returned a verdict of $20,000. On motion for a new trial it was urged that it was excessive. In denying the motion, the trial court said:

"It will be recalled that this case has been twice tried. The verdict in the first case was $22,500. The verdict in the second case was $20,000. I do not find anything in the record to indicate that any testimony went in which would tend to inflame the jury, or cause a reaction of resentment, sympathy, passion, prejudice or sense of horror. It was shown that the boy suffered pain. It was shown what he might have earned if he had lived, and his expectancy was shown, and if the jury believed all this testimony, $20,000 is not excessive."

The deceased was 14 years old at the time of his injury, and would have been 17 had he lived until judgment was entered. The verdict does not disclose the amount allowed for pain and suffering and for loss of his future earnings. While in a semi-conscious condition most of the time, the doctor testified that he suffered pain. Loss of earnings would not accrue until he would have reached the age of 21. The plaintiff will have the use of the sum so allowed from the time of judgment until then, a period of about four years. We are always loath to interfere with the action of the jury in assessing damages in such cases. This duty devolves upon them, and, while this court undoubtedly has the power to vacate judgments, or to require an abatement of the amount thereof as a condition of affirmance, it should be exercised only in

cases where it is manifest that some consideration other than the facts disclosed by the evidence has influenced the verdict. *Fishleigh* v. *Railway*, 205 Mich. 145; *Stone* v. *Sinclair Refining Co.*, 230 Mich. 472. The showing made by the plaintiff as to the probable earnings of the deceased, had he lived, and the computation made therefrom, having in view his probability of life, while admissible as an aid to the jury, we think unconsciously influenced them in the allowance made. The sum allowed, with legal interest added until the deceased would reach the age of 21, will amount to nearly $25,000, from which an annual income of $1,250 may be derived. While a part of the allowance was for pain and suffering, we feel constrained to require an abatement as a condition of affirmance.

If the plaintiff shall, within 20 days after the filing of this opinion, remit all in excess of $15,000, the judgment will stand affirmed, with costs; otherwise, a new trial will be granted, with costs to appellant.

BIRD, SNOW, CLARK, and MCDONALD, JJ., concurred with SHARPE, C. J.

WIEST, J. (*concurring conditionally*). I think the judgment should be affirmed, on condition, however, that plaintiff remit all in excess of $10,000; otherwise reversed.

STEERE and FELLOWS, JJ., concurred with WIEST, J.