RADLOFF v STATE OF MICHIGAN

Docket No. 53466. Submitted November 19, 1981, at Detroit.—Decided
June 8, 1982. Leave to appeal applied for.

William Radloff suffered permanent and paralyzing injuries when
he attempted to dive from an embankment into a gravel-pit
lake excavated by employees of American Aggregates Corpora-
tion, upon land owned by the State of Michigan in the Island
Lake Recreation Area, supervised by the state Department of
Natural Resources. Radloff filed suit in Wayne Circuit Court
against the State of Michigan, the Michigan Department of
Conservation also known as the Department of Natural Re-
sources, and American Aggregates. The court, John H. Haus-
ner, J., entered a judgment for the plaintiff against all the
defendants. Subsequently, the plaintiff and American Aggre-
gates entered into a settlement agreement. The State of Michi-
gan and Department of Conservation, also known as Depart-
ment of Natural Resources, appeal, alleging that: (1) they were
entitled to the defense of governmental immunity; (2) the trial
court erred in finding that they were in complete possession
and control of the gravel-pit area; (3) the trial court erred in
finding that the gravel pit constituted an intentionally created
nuisance; and (4) the verdict for damages was excessive. *Held:*

1. The defendants were not entitled to governmental immu-
nity on the basis that their activities in conjunction with the

REFERENCES FOR POINTS IN HEADNOTES

[1] 59 Am Jur 2d, Parks, Squares, and Playgrounds § 38.
[2, 3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 42.
State's immunity from tort liability as dependent on governmental
or proprietary nature of function. 40 ALR2d 927.
[4] 5 Am Jur 2d, Appeal and Error § 820.
[5] 62 Am Jur 2d Premises Liability § 12.
[6] 58 Am Jur 2d, Nuisances §§ 12, 13.
[7] 58 Am Jur 2d, Nuisances § 113.
[8] 22 Am Jur 2d, Damages § 366.
[9] 22 Am Jur 2d, Damages § 109.
[10] 22 Am Jur 2d, Damages § 110.
Per diem or similar mathematical basis for fixing damages for pain
and suffering. 3 ALR4th 940.

gravel-pit area were governmental functions related to the operation and maintenance of a recreational area because they leased the area adjacent to the recreational area to American Aggregates for the excavation of gravel. The defendants' activities regarding the gravel pit should not be classified as uniquely governmental functions because the maintenance of a gravel pit is not a uniquely governmental function. Furthermore, the defendants were not entitled to governmental immunity because their activities relating to the gravel pit constituted a proprietary function.

2. The trial court's finding that the state was in complete possession and control of the gravel-pit area was not clearly erroneous. By a 1973 warranty deed, American Aggregates released all rights to the land to the state except for a few insignificant privileges concerning tracks, power lines and buildings which were not near the gravel pit and in no way affected its use. Evidence established that park employees occasionally visited the gravel pit and were aware that persons who parked their cars in the park were swimming in the gravel-pit lake.

3. The trial court did not err in finding that the gravel-pit lake was a nuisance in fact. Expert testimony conclusively established that the pit was dangerous for use as a swimming and diving site. The evidence indicated that the state knew that the gravel pit was unsafe for public use but made no effort to discourage its use by the public or to contour the embankment to make the area safe. Further, there was evidence to support the trial court's finding that the nuisance was intentionally created. The defendants intended to bring about the conditions which were found to be a nuisance. The trial court did not err in holding the defendants liable for the intentionally created nuisance even though the defendants did not actually excavate the gravel.

4. The trial court did not abuse its discretion in the award of damages to the plaintiff. The court only had the plans and figures submitted by the plaintiff for review. The defendants gave the court no assistance in determining an appropriate amount of damages. There was no error on the part of the trial court in its award for either past or future intangible damages.

Affirmed.

1. GOVERNMENTAL IMMUNITY — RECREATIONAL PARKS.

Generally, the state's operation and maintenance of a recreational park can be a governmental function; however, not every activity related to a recreational park is an immune

governmental function for purposes of the defense of sovereign immunity from tort liability.

2. GOVERNMENTAL IMMUNITY — GRAVEL MINING AND STORAGE.

The maintenance of a gravel mining and storage operation by a governmental agency is not a function *sui generis* to government and not subject to governmental immunity from tort liability (MCL 691.1407; MSA 3.996[107]).

3. GOVERNMENTAL IMMUNITY — PROPRIETARY FUNCTIONS.

A state agency may engage in a proprietary function at the same time it is engaged in a governmental function but, where such a dual use of property is evident, the proprietary function must be separated from the governmental function and the governmental agency loses its immunity from tort liability as to the proprietary use.

4. APPEAL — FINDINGS OF FACT.

Findings of fact by a trial court should not be set aside on appeal unless they are clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.2).

5. NEGLIGENCE — POSSESSOR OF LAND — BUSINESS INVITEES.

Liability for the dangerous conditions of property is conditioned upon both possession and control of the land because the person in possession and control is normally best able to prevent any harm to others; ownership alone is not dispositive.

6. NUISANCE — NUISANCE IN FACT — NUISANCE AT LAW.

Nuisances are classified as nuisances at law or nuisances in fact; a nuisance at law is an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings; nuisances in fact are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property.

7. NUISANCE — ACTIONS.

A defendant in an action based on nuisance may be liable for damage caused by the nuisance if he: (1) created the nuisance; (2) owned or controlled the property from which the nuisance arose; or (3) employed another to do work which he knows is likely to create a nuisance.

8. DAMAGES — EXCESSIVE VERDICT.
   A verdict in a personal injury case is excessive if it shocks the judicial conscience.

9. DAMAGES — PAIN AND SUFFERING.
   There is no precise standard of measurement for damages for a plaintiff's pain and suffering; a verdict that includes damages for a plaintiff's pain and suffering should be upheld on appeal unless it is such as to shock the conscience of the court.

10. DAMAGES — PAIN AND SUFFERING.
    The use of a per diem formula for determining a plaintiff's damages for pain and suffering is proper.

*Sommers, Schwartz, Silver & Schwartz, P.C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Frank J. Pipp* and *Sterling W. Schrock,* Assistants Attorney General, for defendant.

Before: CYNAR, P.J., and V. J. BRENNAN and H. E. DEMING,* JJ.

V. J. BRENNAN, J. Plaintiff filed suit against the State of Michigan, Michigan Department of Conservation, also known as Department of Natural Resources (DNR), and American Aggregates Corporation alleging that he suffered permanent and paralyzing injuries when he attempted to dive from an embankment into a gravel-pit lake excavated by American Aggregates upon land owned by the State of Michigan in a state recreational park supervised by the DNR. Plaintiff is now a quadraplegic as a result of the injuries. A bench trial was held, and a verdict for damages of $7,491,854 was returned in favor of the plaintiff. American Aggregates subsequently settled with

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff for $4,000,000 and is not involved in this appeal. The State of Michigan and the DNR (hereinafter defendants) appeal as of right.

It is undisputed that the land on which this incident occurred was owned by the State of Michigan, which operated the Island Lake Recreation Area through the DNR.

Prior to 1950, the state owned all the land in Section 10 of Green Oak Township, except for a parcel in the southwest one-quarter, which was owned by American Aggregates. In 1950 and 1951, the state and American Aggregates negotiated agreements whereby the state would acquire the remaining property in Section 10, while American Aggregates would be granted the right to remove gravel located on this land. The 1950 agreement gave American Aggregates the right to enter onto and remove gravel from specified state land over a 30-year period, including the state owned land of Section 10 south of Spring Creek. In return for this privilege, the state was to receive title to the parcel in the southwest one-quarter and two cents per ton of gravel removed. The agreement also specified that the state "shall retain the use of the property until such time as gravel removal operations are started and that during the time of operation, it shall have the use of any portion of it not being directly used or affected by such operations * * *". The state retained the right to all other minerals, the right to "use or lease" the property "at any time for any purpose other than but not to the detriment of the rights and privileges herein granted". The agreement also required American Aggregates to handle and place its surplus and waste in such a manner as would best serve the use of the state.

In 1951, by warranty deed, American Aggre-

gates conveyed its property in Section 10 to the state, subject to its rights in the 1950 agreement. As of the recording of the deed, the state owned all of the land in Section 10 and had leased gravel rights to American Aggregates in the land lying south of Spring Creek.

In the subsequent years, American Aggregates extracted gravel, leaving behind the water-filled gravel pit where plaintiff was injured. During the same period, the state developed its Island Lake Recreation Area directly north of this same area. The area of Section 10 south of Spring Creek was intended to be included in the recreation area, and was within the boundaries of the recreation area as shown in a master plan for the park drawn in November, 1974.

In 1973, a warranty deed was executed by American Aggregates to the state. In this deed, American Aggregates surrendered its 1950 lease rights in the Section 10 property, subject to specific reservations allowing American Aggregates to utilize certain power lines, structures and tracks located on the property some distance away from the gravel pit.

Shortly after the execution of this 1973 deed, American Aggregates, which had heretofore posted "no trespassing" signs around the gravel pit and had patrolled the area with security guards to eject unauthorized persons, removed the warning signs and stopped the patrols.

At the close of the trial, the trial judge rendered his findings of fact and conclusions of law from the bench. Regarding the state's liability, the trial judge found that: (1) the state was not immune from liability in this case because its activities were not governmental functions relating to the operation of a public park; (2) the state was not

immune from liability for the further reason that the gravel pit came into existence and was continued pursuant to the proprietary activities of the state as a landowner; (3) the state was in complete possession and control of the gravel-pit area after 1973, even if it failed to appreciate the significance of the 1973 release; and (4) the gravel pit constituted an intentionally created nuisance.

Defendants assert that all of the above findings by the trial judge were erroneous. We do not agree.

First, although this Court has found that generally the operation and maintenance of a recreational park can be a governmental function, not every activity related to the recreational park is an immune governmental function. *Feliciano v Dep't of Natural Resources,* 97 Mich App 101; 293 NW2d 732 (1980); *Haselhuhn v Huron-Clinton Metropolitan Authority,* 106 Mich App 461; 308 NW2d 190 (1981).

In the present case, the defendants leased the area adjacent to the recreational area to American Aggregates for the excavation of gravel. This activity did not relate to the maintenance or operation of a recreational area. At the trial, defendants never asserted that their activities regarding the gravel pit were in any way connected to the recreational area at the time of the accident apart from being adjacent to the recreational area. Therefore, defendants are not entitled to governmental immunity on the basis that their activities in conjunction with the gravel-pit area were governmental functions related to the operation and maintenance of a recreational area.

Furthermore, defendants' activities regarding the gravel pit, considered separate from the recreational area, cannot be classified as uniquely gov-

ernmental functions. In the recent case of *Lucchesi v Kent County Road Comm,* 109 Mich App 254; 312 NW2d 86 (1981), the Court found that the defendant, who operated a gravel pit, was not entitled to governmental immunity because the maintenance of a gravel pit was not a uniquely governmental function.

In that case, the defendant owned and operated a gravel pit adjacent to a public park. Over the years, the defendant had acquiesced in public use of the site for many recreational purposes, chiefly motor sports. The premises were open to the public day and night and the only sign posted was that firearms were not permitted. The defendant stockpiled processed gravel in large mounds, which was used to build and repair roads. On one mound the material was removed from only one side leaving "a crescent-shaped ring of material with a precipitous escarpment at its rear". A driver traveling along well-defined trails leading to the top of the mound could not see that the entire back of the hill had been removed until he was at the top of a twenty-foot precipice. The plaintiff's decedent, along with three others, was killed when he drove a jeep off the top of the mound. The Court found:

"We conclude that, on the basis of the decisions in *Parker v City of Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), the maintenance of defendant's gravel mining and storage operations do not enjoy statutory governmental immunity.

"Given the standard imposed by *Perry* and *Parker,* that government is immune from suit only where it is engaged in those functions which are *sui generis* to government, we are not persuaded that the maintenance of a gravel pit, or even construction and maintenance of roads within a county road network, is a uniquely governmental activity." *Lucchesi, supra,* 258.

The present case is not distinguishable from *Lucchesi* even though here the defendants did not do the actual excavation but, instead, leased the land to American Aggregates for the purpose of excavating gravel. If the maintenance and operation of a gravel pit is not a uniquely governmental function, then certainly the leasing of land for the purpose of operating a gravel pit is not a uniquely governmental function. Therefore, we find that the defendants were not entitled to the defense of governmental immunity.

Moreover, even if this Court were to find that defendants' activities were governmental functions, defendants would not be entitled to the defense of governmental immunity because the trial court correctly found that defendants were engaged in proprietary activities as a landowner.

A state agency may engage in a proprietary function at the same time it is engaged in a governmental function, but where such a dual use of property is evident, the proprietary function must be separated from the governmental function, and the governmental agency loses its immunity as to the proprietary use. *Carlisi v Marysville,* 373 Mich 198; 128 NW2d 477 (1964); *Bofysil v Dep't of State Highways,* 44 Mich App 118, 130; 205 NW2d 222 (1972), *lv den* 389 Mich 768 (1973).

Here, the defendants leased the land in exchange for title to a parcel of property and two cents per ton of gravel removed. Clearly this was a proprietary function. Although *Carlisi* and *Bofysil* were decided prior to the *Parker* and *Perry* decisions, we believe that their validity was unaffected by the recent developments in the area of governmental immunity. Thus, defendants were not entitled to governmental immunity on the basis that their activities relating to the gravel pit constituted a proprietary function.

Next, defendants assert that if they are not entitled to governmental immunity, then they still are not liable to plaintiff for the reason that they were not in complete possession and control of the gravel-pit area even if they owned the land.

The trial court found that defendants were in complete possession and control of the gravel-pit area after 1973 because of the 1973 release executed by American Aggregates even if the defendants failed to appreciate the significance of the release.

Findings of fact by the trial court shall not be set aside unless clearly erroneous. GCR 1963, 517.1. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Auto Electric & Service Corp v Rockwell International Corp,* 111 Mich App 292; 314 NW2d 592 (1981).

Defendants rely on *Merritt v Nickelson,* 407 Mich 544; 287 NW2d 178 (1980). In that case, the plaintiff's deceased attended the opening day race at the defendant-son's race track. The deceased was killed when a flywheel exploded, throwing steel fragments into the crowd, one of which struck the deceased. The defendant-son was a tenant in common with his mother of the land upon which he had built the race track. The plaintiff joined the mother in the lawsuit alleging that she was liable for the deceased's death because she was a co-owner of the property. The Court stated:

"Premises liability is conditioned upon the presence of both possession and control over the land. This is so because

" '[T]he man in possession is in a position of control,

and normally best able to prevent any harm to others.'
Prosser, *supra,* § 57, p 351.

\* \* \*

"Our application of this principle is in accordance
with the Restatement of Torts. The Restatement im-
poses liability for injuries occurring to trespassers, li-
censees, and invitees upon those who are 'possessors' of
the land. 2 Restatement Torts, 2d, §§ 333-350, pp 182-
233. A 'possessor' is defined as:

" '(a) a person who is in occupation of the land with
intent to control it or

" '(b) a person who has been in occupation of land
with intent to control it, if no other person has subse-
quently occupied it with intent to control it, or

" '(c) a person who is entitled to immediate occupa-
tion of the land, if no other person is in possession
under Clauses (a) and (b).' *Id.,* § 328 E, p 170.

"Ownership alone is not dispositive. Possession and
control are certainly incidents of title ownership, but
these possessory rights can be 'loaned' to another,
thereby conferring the duty to make the premises safe
while simultaneously absolving oneself of responsibil-
ity." 407 Mich 552-553.

The Court in *Merritt* held that the mere fact
that the mother was a tenant in common with her
son did not place her in occupancy of the land
with intent to control it. Although the mother was
entitled to enter upon every part of the land, the
Court found that she had not chosen to do so and,
therefore, the mother was not liable to the plain-
tiff.

Defendants argue that, in consideration of *Mer-
ritt,* the trial court should have found that Ameri-
can Aggregates was in possession and control of
the gravel-pit-lake area. Defendants' reliance on
*Merritt* is misplaced. An examination of the 1973
warranty deed does not support defendants' con-

tention that they were *mere* landowners as the mother in *Merritt* was.

The 1973 warranty deed, drafted by the state, stated that American Aggregates released all rights to the land in 1973, except for a few insignificant privileges concerning tracks, power lines and buildings which were not near the gravel pit and in no way affected its use. Shortly after the execution of the 1973 deed, American Aggregates, which had posted "no trespassing" signs around the gravel pit and had patrolled the area with security guards to eject unauthorized persons, removed the warning signs and stopped the patrols. The evidence also established that park employees occasionally visited the gravel pit and were aware that persons who parked their cars in the park were swimming in the gravel-pit lake. After reviewing the evidence, we are not convinced that the trial court's finding, that the state was in complete possession and control of the gravel-pit area after 1973, was clearly erroneous.

The last issue concerning liability is whether the trial court erred in finding that the gravel-pit lake was an intentionally created nuisance. We must determine whether this finding is clearly erroneous. GCR 1963, 517.1.

Nuisances are classified as nuisances at law or nuisances in fact. A nuisance at law is an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. *Rosario v Lansing,* 403 Mich 124, 132-133; 268 NW2d 230

(1978); *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959).

In *Gerzeski v Dep't of State Highways,* 403 Mich 149, 161-162; 268 NW2d 525 (1978), Justice MOODY, joined by four other justices, defined an intentional nuisance as a "nuisance created by conduct intended to bring about conditions which, in fact, constituted a nuisance * * *". Justice MOODY also quoted from the case of *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952), where the Court stated that an intentional nuisance means not that the existence of a nuisance was intended by the creator but, rather, that the creator intended to bring about the conditions which are in fact found to be a nuisance.

We find no error in the trial court's determination that the gravel-pit lake was a nuisance in fact. Expert testimony conclusively established that the pit was dangerous for use as a swimming and diving site due to the rawness of the excavation which stripped away the lateral support of the embankment and because of the instability of the soil. The testimony also indicated that this condition could have been eliminated in two days by a single bulldozer leveling the embankments. Further, the evidence indicated that the state knew that the gravel pit was unsafe for public use but made no effort to discourage its use by the public or to contour the embankment to make the area safe.

In *Melendres v Soales,* 105 Mich App 73, 80; 306 NW2d 399 (1981), the Court found that constructing a dock into shallow, murky water for the use of guests, without posting "no diving" signs or depth markers, could reasonably be found to create a dangerous condition which might result in

injury. The plaintiff in that case dove from a dock into the water and sustained injuries which rendered him a quadraplegic.

In the present case, defendants posted no signs prohibiting swimming and diving nor did they instruct the park employees that swimming in the gravel-pit lake was dangerous. Such a lake which had insufficient support of the embankments and unstable soil could reasonably be found to be a dangerous condition which might result in injury. Therefore, the gravel-pit lake was a nuisance in fact.

Further, there was evidence to support the trial court's finding that the nuisance was intentionally created. The defendants intended to bring about the conditions which were found to be a nuisance. That is, the defendants allowed American Aggregates to extract gravel from its land leaving behind the pit which then naturally became filled with water. Thus, defendants intentionally brought about the gravel-pit lake. Although the defendants did not set out to create a nuisance by leasing the land for excavation, they brought about the conditions which became a nuisance. After reviewing the evidence, we are convinced that the trial court did not clearly err in finding that the gravel-pit lake constituted an intentionally created nuisance.

In addition, defendants cannot escape liability on the basis that they did not participate in the excavation, but merely leased their lands to American Aggregates. To be liable for damage caused by a nuisance, the defendants must have: (1) created the nuisance; (2) owned or controlled the property from which the nuisance arose; or (3) employed another to do work which he knows is likely to create a nuisance. *Stemen v Coffman,* 92 Mich App

595, 597-598; 285 NW2d 305 (1979). Because we have already determined that the trial court correctly found that the defendants both owned and controlled the property after 1973, we further find that the trial court did not err in holding the defendants liable for the intentionally created nuisance even though the defendants did not actually excavate the gravel.

To summarize the preceding, we conclude that the following findings by the trial court were not clearly erroneous: (1) the defendants were not entitled to the defense of governmental immunity; (2) the defendants were in complete possession and control of the gravel-pit area after 1973; and (3) the gravel pit constituted an intentionally created nuisance.

Finally, defendants claim that the verdict for damages was excessive. The trial court returned a verdict for damages of $7,491,854 in favor of the plaintiff. The trial court itemized the damages as follows:

| | |
|---|---:|
| Past Wage Loss | $ 54,153 |
| Future Wage Loss | 474,454 |
| Nursing Care | 1,414,590 |
| (Licensed practical nurse for 8-hour shift) | |
| Nursing Care | 1,414,590 |
| (Nurse's aide for 16-hour shift) | |
| Physical Therapy | 59,617 |
| Housing Costs | 225,000 |
| Architect's Fee | 27,000 |
| Past Intangibles | 1,500,000 |
| Future Intangibles | 2,322,450 |
| | $7,491,854 |

A verdict is excessive if it "shocks the judicial

conscience". *Burnett v Mackworth G Rees, Inc*, 109 Mich App 547, 552-553; 311 NW2d 417 (1981).

Even though we feel that this verdict is certainly more than what this Court would have awarded, we are compelled to affirm it for the following reasons. The trial court's oral opinion encompassed 113 pages of trial transcript. The findings of fact were very detailed and we must surmise that the trial court gave great thought to the findings. Further, the facts of this case indicate that plaintiff will never recover from his injuries and will suffer continuous pain for the rest of his life. Plaintiff was 23 years old when the accident occurred and has a normal life expectancy of an additional 45 years. Also, plaintiff offered evidence on each of the items of damages awarded. The defendants did not offer any proofs whatsoever to contradict plaintiff's proofs. Consequently, after reviewing the evidence, the trial court awarded damages in accordance with the testimony presented.

Defendants complain specifically about the trial court's awards for wage loss, professional nursing care, and past and future intangible damages. Again we point out that the defendants offered no proof whatsoever in rebuttal or by way of an alternative plan for damages for the court to consider. Other than as to how wages should be discounted, the attorneys for the defendants did not even allude to the issue of damages in closing argument.

Defendants allege that plaintiff's wage loss should not have been based on the earnings of an interstate truck driver because plaintiff was unemployed for six months prior to the accident. We find no error in the trial court's award because the plaintiff testified that in the past he had worked as

a truck driver and he planned to attend a truck driving school. The trial court could properly accept plaintiff's expert testimony for calculation of the earnings of a truck driver. *Nicholas v Maxwell Motor Corp,* 237 Mich 612, 618-619; 213 NW 128 (1927).

Next, defendants contend that the award for professional nursing care was excessive because the evidence did not show a requirement for professional assistance. We disagree. The medical testimony indicated that plaintiff required assistance at all times because he could not perform even the most simple of tasks alone. Plaintiff presented expert testimony for calculation of the cost to hire a licensed practical nurse for around-the-clock attendance to plaintiff's needs. The trial court, however, awarded to plaintiff costs for a licensed practical nurse for only eight hours a day and a nurse's aide for the remainder of the day. We find no error because the trial court's finding was consistent with the evidence.

Defendants also complain that there was no evidence that would justify the trial court in awarding $1,500,000 for past intangible damages and $2,322,450 for future intangibles (based upon $100,000 per year for plaintiff's life expectancy of 45 additional years, reduced to present worth).

As to the amounts for pain and suffering, there is no precise standard of measurement, and unless it is such as to shock the conscience of the court, it should be upheld. The amount allowed must rest within the sound discretion of the trier of fact. *Paton v Stealy,* 272 Mich 57, 63-64; 261 NW 131 (1935).

The trial court did not abuse its discretion in awarding the damages aforementioned as it had no other plans and figures submitted to it for

review other than those submitted by the plaintiffs. The defendants gave the court no help.

"There is and can be no absolute standard by which we can measure the amount of damages in personal injury cases. *Individual opinions may differ as to the correctness of awards, even those made by trial judges. It has yet to be determined whether the judgment of a one-man jury is sounder than that of 12. The parties seemed to prefer the judgment of one and waived a jury. Now appellant suggests that judgment of eight is better than either method.* \* \* \* Assuming even that our verdict might be in a different amount, we are loath to disturb verdicts for personal injuries on the ground that the amount is excessive." *Watrous v Conor,* 266 Mich 397, 401 (1934). See also *Pippen v Denison Division of Abex Corp,* 66 Mich App 664, 674-675 (1976), *lv den* 399 Mich 823 (1977), quoting *Watrous.*

" 'As long as the amount awarded is within the range of the evidence, and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering, the verdict rendered should not be set aside.' " *Stevens v Edward C Levy Co,* 376 Mich 1, 5; 135 NW2d 414 (1965); *Pippen, supra,* 66 Mich App 675; *Cryderman v Soo Line R Co,* 78 Mich App 465, 474; 260 NW2d 135 (1977), *lv den* 402 Mich 867 (1978).

Further, the Supreme Court has specifically approved of the use of a per diem formula for determining damages for pain and suffering. *Yates v Wenk,* 363 Mich 311; 109 NW2d 828 (1961); *Crenshaw v Goza,* 43 Mich App 437, 444; 204 NW2d 302 (1972). There was no error on the part of the trial court in its award for either past or future intangible damages.

Affirmed.