McKee v DEPARTMENT OF TRANSPORTATION

Docket No. 56827. Submitted October 4, 1983, at Lansing.—Decided March 20, 1984. Leave to appeal applied for.

David and Susan McKee and their two children, Kimberly and Gregory, were injured when, in the early morning hours of May 15, 1974, their automobile collided with a light pole located at the side of I-94 in the City of Detroit. Kimberly received severe brain damage when the light pole penetrated the automobile. David and Susan McKee, individually, and Susan McKee as next friend of the children, brought an action against the Michigan Department of Transportation in the Court of Claims, alleging that the injuries were proximately caused by the narrow shoulder, the fact that the light pole encroached on the shoulder, and the fact that defendant failed to warn motorists that reduced speeds during rainstorms were necessary because the design of the roadway was such that it permitted water to accumulate in the curb lanes during rainstorms such as was occurring at the time of the accident. Plaintiffs alleged, and there were proofs supporting, that the shoulder and lighting arrangements at the point of the accident

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 488-490.
    57 Am Jur 2d, Municipal, School, and State Tort Liability § 133.
    Liability, in motor vehicle-related cases, of governmental entity for injury, death, or property damage resulting from defect or obstruction in shoulder of street or highway. 19 ALR4th 532.
[2] 39 Am Jur 2d, Highways, Streets, and Bridges § 335.
    57 Am Jur 2d, Municipal, School, and State Tort Liability § 306.
[3] 5 Am Jur 2d, Appeal and Error § 609.
[3, 9] 5 Am Jur 2d, Appeal and Error § 839 et seq.
[4, 8] 39 Am Jur 2d, Highways, Streets, and Bridges § 64 et seq.
[5-7] 58 Am Jur 2d, Nuisances § 12.
[8] 39 Am Jur 2d, Highways, Streets, and Bridges § 341 et seq.
[10] 22 Am Jur 2d, Damages §§ 26, 349.
[11] 22 Am Jur 2d, Damages § 87.
    Changes in cost of living or in purchasing power of money as affecting damages for personal injuries or death. 12 ALR2d 611.
[12] 45 Am Jur 2d, Interest and Usury § 59 et seq.

were not in conformance with recognized highway design standards in effect either at the time of the accident or in 1957 and 1958 when the highway was designed and constructed. The trial court, Peter B. Spivak, J., concluded that the placement of the light pole on the shoulder, along with other design features, constituted a nuisance which had been intentionally erected and maintained by the defendant, that the roadway was not reasonably safe, and that defendant was negligent in failing to provide a shoulder of adequate width, in permitting the light pole to encroach on the shoulder, and in failing to warn of the hazards of water accumulation in the roadway because of its parabolic design. The court further found that the injuries of the plaintiffs were proximately caused by the acts and omissions of the defendant. The court originally awarded damages totalling $6,774,160, the bulk of which, $5,124,160, was awarded to Kimberly for future wage loss, future medical expenses, and pain and suffering. The court thereafter reduced the award to Kimberly to $4 million, however, this reduction was not attributed to being the result of a reduction of the original award for future damages to its present value. Indeed, the court refused to reduce the award to its present value, holding that "any normal reduction to present value is offset by inflation". The court granted judgment interest at the rate of five percent in accordance with the provisions of the Court of Claims Act. The court refused to grant interest, including prejudgment interest, pursuant to the general judgment interest statute, holding that these proceedings were controlled by the specific interest provision contained in the Court of Claims Act. Defendant appeals, raising claims of error relative to liability, amount of damages, and the failure to reduce future damages to their present value. Plaintiffs cross-appeal, urging error in the trial court's refusal to grant interest pursuant to the general judgment interest statute. *Held:*

1. Negligence in the design of a highway shoulder and the placement of a light pole within that shoulder are actionable under the highway exception to the governmental immunity statute, since highway shoulders are part of the improved portion of the highway designed for vehicular travel.

2. The question of whether the narrow shoulder or the placement of the light pole was a proximate cause of the plaintiffs' injuries was a question of fact to be determined by the trial court as the trier of fact.

3. The statutory duty to repair and maintain highways so that they are reasonably safe includes the duty to make reason-

able changes to existing roads when its becomes evident that the existing design presents an unreasonable risk of injury.

4. While the trial court erred in finding that the design of the shoulder, the placement of the light pole, and the design of the road profile constituted a nuisance per se, reversal is not mandated since the trial court found, and the evidence supports the finding, that those design features also constituted an intentional nuisance in fact.

5. The damages found by the trial court cannot be said to be excessive, there being substantial testimony supporting the trial court's findings of fact with respect to damages.

6. The trial court erred in refusing to reduce the future damages to their present value. While the effect of inflation may be considered in the determination of damages, the possibility of inflation does not justify the failure to reduce an award of future damages to its present value. Remand for the reduction of the award of future damages to its present value is necessary.

7. The trial court properly refused to award judgment interest pursuant to the general judgment interest statute, the judgment interest provision in the Court of Claims Act being proper and controlling.

Affirmed, but remanded for reduction of the award for future damages to its present value.

1. GOVERNMENTAL IMMUNITY — HIGHWAYS — HIGHWAY SHOULDERS.

The state is statutorily obligated to maintain highway shoulders in reasonable repair so that they are reasonably safe for their intended use as adjuncts of the paved portion of the highway (MCL 691.1402; MSA 3.996[102]).

2. ACTIONS — HIGHWAYS — PROXIMATE CAUSE — QUESTIONS OF FACT.

The questions of whether a highway shoulder's width and the placement of a light pole within the shoulder were proximate causes of injuries resulting from an automobile striking a light pole located within a narrow shoulder are questions of fact which must be decided by the trier of fact.

3. APPEAL AND ERROR — FINDINGS OF FACT — BENCH TRIAL.

A finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

4. Highways — Duty of Repair — Defective Design.

> The duty to maintain a highway in reasonable repair creates a continuing duty to make the highways reasonably safe for travel and includes a duty to alter existing highways to correct prior defects (MCL 691.1402; MSA 3.996[102]).

5. Nuisance — Nuisance Per Se.

> A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surrounding.

6. Nuisance — Nuisance Per Se — Nuisance in Fact.

> Reversal is not mandated where a trial court, sitting as the trier of fact, erroneously holds that the condition of a roadway is a nuisance per se such that governmental immunity is not available to the state but where the evidence established, and the trial court found, that, under the particular circumstances, those conditions also constituted a nuisance in fact.

7. Nuisance — Nuisance in Fact.

> Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property.

8. Highways — Governmental Immunity — Duty To Repair.

> The focus of the highway exception to the general grant of governmental immunity is whether the government agency charged with the maintenance of the highway kept it in reasonable repair and reasonably safe and fit for travel; the determination of reasonableness is to be based upon all the relevant factors in the particular case, including the danger imposed by a particular design, the increase in safety provided by some other design, and the cost necessary to implement some new or safer design or device (MCL 691.1402; MSA 3.996[102]).

9. Damages — Appeal — Bench Trials.

> The standard for appellate review of damage awards made by a trial court sitting as the trier of fact is whether the award is clearly erroneous; an appellate court should insure just compensation based on the evidence, but should not set aside the trial court's award merely because it has a difference of opinion as to the amount of the award (GCR 1963, 517.1).

10. Damages — Future Losses — Present Value.

> An award of damages for future losses must be reduced to its present value.

11. Damages — Future Losses — Inflation.

> Inflation is a factor which may be considered in assessing damages; however, the existence of inflation does not provide a basis upon which a trial court, sitting as the trier of fact, may ignore the duty to reduce an award of damages for future losses to its present value.

12. Interest — Judgments — Court of Claims.

> Prejudgment interest pursuant to the statutory provision providing for interest on civil judgments generally is not available with respect to judgments secured in the Court of Claims, judgment interest in the Court of Claims being subject to a specific statutory provision which provides only for post-judgment interest.

*Canyock & Thumm, P.C.* (by *Lawrence P. Canyock*), and *Gromek, Bendure & Thomas* (by *Mark R. Bendure*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl K. Carlson,* Assistant Attorney General, and *George J. Platsis,* Special Assistant Attorney General, for defendant.

Before: Allen, P.J., and Beasley and M. E. Clements,* JJ.

Beasley, J. Defendant, Michigan Department of Transportation, appeals as of right from a Court of Claims judgment which awarded plaintiffs $5.6 million in damages for negligence and intentional nuisance. Plaintiffs cross-appeal.

Plaintiffs, David and Susan McKee, brought suit on their own behalf and on behalf of their two children, Kimberly and Gregory, to recover for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

injuries received when their automobile struck a lighting standard located off the shoulder of I-94 near the Frontenac overpass in the City of Detroit. The McKees were returning to their home in Grosse Pointe from Springfield, Illinois. The collision with the pole occurred at approximately 3:30 a.m. on May 15, 1974, when David McKee attempted to avoid hitting a disabled vehicle owned by Thomas Williams which had come to rest in the center and left-hand lanes of I-94 with its lights out. It had been raining steadily and puddles of water had formed on the road.

According to David McKee's testimony, immediately after the accident he noticed that Susan had been thrown from the car onto the pavement, Gregory was on the car floor with blood on his face, and Kimberly lay on the back seat, thrashing her legs. Kimberly was the most severely injured; much of the left hemisphere of her brain was destroyed when the light standard penetrated the car.

Plaintiffs claimed that defendant's responsibility arose from negligent design and maintenance of the I-94 shoulder, the lighting standard's encroachment on the shoulder, and the failure to warn motorists of the lack of skid resistance in the right-hand lane due to the parabolic design of the road cross-section.

Plaintiffs alleged that the infrangible lighting standard was erected so as to encroach on the narrow shoulder and that this left an inadequate usable shoulder for foreseeable and intended emergency uses of the shoulder. Plaintiffs further contended that the shoulder and lighting standard designs were obsolete and in nonconformance with recognized highway design standards in 1957, when the plans for this section of the expressway

were approved, and in 1958, when this section was opened to traffic.

After nearly ten months of trial, the court issued a 67-page opinion, concluding that the light pole's placement on the shoulder, in conjunction with the other features, constituted a nuisance which had been intentionally erected and maintained by defendant. The court further concluded that the roadway was not reasonably safe and that defendant was negligent in three separate respects: (1) the inadequate width of the shoulder, (2) the encroachment of light poles on the shoulder, and (3) the failure to warn of the hazards of water accumulation in the right-hand lane due to its parabolic design. The trial court found that these acts were a proximate cause of the injuries sustained by plaintiffs and, therefore, found defendant liable for those injuries. Defendant appeals both the finding of liability and the amount of damages. Plaintiffs cross-appeal the court's failure to award prejudgment interest.

Defendant first contends that the highway's shoulder width and light pole placement are not actionable under MCL 691.1402; MSA 3.996(102). Defendant argues that the state's liability for repair and maintenance of highways only includes "the improved portion of the highway designed for vehicular travel".[1] As shoulders were not designed for vehicular travel, defendant claims the light poles were . not hazardous to highway travel. Therefore, according to defendant, there can be no liability for the shoulder width and pole placement based on defendant's statutory duty to repair and maintain highways.

The relevant part of MCL 691.1402; MSA 3.996(102) provides:

---

[1] MCL 691.1402; MSA 3.996(102).

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. * * * The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel."

The law is well established that the shoulders of a highway are designed for vehicular use and, thus, the state is obligated to maintain them in reasonable repair "so that they are reasonably safe for their intended use as adjuncts of the paved portion of the highway".[2]

Defendant next argues that, as a matter of law, shoulder width and light pole placement cannot be the proximate cause of plaintiffs' injuries. Defendant cites *Dawson v Postal Telegraph-Cable Co*,[3] and other cases in support. *Dawson* cited 82 ALR 395 as authority, stating that a company lawfully maintaining poles at or near a public highway is not liable to persons striking such " 'unless it is erected on the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using

[2] *Johnson v Michigan,* 32 Mich App 37, 39; 188 NW2d 33 (1971), lv den 385 Mich 762 (1971); see, also, *Hall v Dep't of State Highways,* 109 Mich App 592, 602-603, fn 4; 311 NW2d 813 (1981), lv den 413 Mich 942 (1982); *Cryderman v Soo Line R Co,* 78 Mich App 465, 476; 260 NW2d 135 (1977), lv den 402 Mich 867 (1978).

[3] 265 Mich 139; 251 NW 352 (1933).

the highway, and the location of the pole is the proximate cause of the collision' ".[4] Under the particular facts in *Dawson,* that court found the location of the poles was not the proximate cause of the injury. In the instant case, however, there was considerable testimony that if the light pole had been placed several inches farther back, the light pole would not have penetrated the passenger compartment.

The question of proximate cause is one of fact to be determined by the trier of fact.[5] Under GCR 1963, 517.1, a finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.[6] As the testimony was such to support the court's conclusion that, along with the width of the shoulder and the design of the roadway, the placement of the light pole was a proximate cause of the accident, we find no clear error.[7]

Defendant's third argument is that the duty to repair and maintain highways does not include

---

[4] 265 Mich 142.

[5] *Hall v Dep't of State Highways,* 109 Mich 592; 311 NW2d 813 (1981).

[6] *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

[7] Since the law in this state recognizes that there may be many "proximate causes" of a particular occurrence, and since it is unnecessary to distinguish between major and minor or between significant and slight or between large and small proximate causes, we do not find error. For slight proximate causes, see cases with intervening intentional torts such as *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980) [Is the failure to repair a defective lock an equivalent proximate cause of the act of the rapist?]; *Johnston v Harris,* 387 Mich 569; 198 NW2d 409 (1972) [Is the failure to install adequate lighting and to repair a defective lock an equivalent proximate cause of the "mugging" of a tenant?]; *Davis v Thornton,* 384 Mich 138; 180 NW2d 11 (1970) [Is the failure to remove the ignition key an equivalent proximate cause of the stealing of the car and the running of the stolen car into another car?].

altering existing highways or highway plans. As there was testimony that the design of the shoulder, including placement of the light poles, conformed with urban freeway standards at the time of design and construction, negligence cannot be found based on the plan or design, defendant contends. Further, defendant argues that, since I-94 was designed and constructed well in advance of the imposition of liability on the state for alleged defects, to impose liability for such is an improper retroactive application of a duty.

The statute in question, MCL 691.1402; MSA 3.996(102), was enacted in its present form in 1964, 1964 PA 170. Thus, contrary to defendant's argument, tort liability for negligently maintained highways was in effect prior to 1974, when the accident occurred. The tort liability includes liability for failure to correct defects arising from the original design or construction of highways; a continuing duty to "maintain the highway in reasonable repair".[8] Furthermore, the trial court imposed liability on defendant based on a finding of nuisance, which, as a judge-made exception to governmental immunity, came into existence well before the accident in question.[9] Thus, there is no retroactivity problem in the imposition of liability on defendant.

The liability issue in the within case concerns whether the highway was in reasonable repair and reasonably safe. Defendant may be held liable for design and construction defects of I-94 even if the highway was in compliance with the standards existing when it was constructed in 1957. In addi-

[8] *Hall, supra; Stremler v Dep't of State Highways,* 58 Mich App 620; 228 NW2d 492 (1975), *lv den* 404 Mich 815 (1979).

[9] See *Maki v East Tawas,* 385 Mich 151; 188 NW2d 593 (1971); *Rosario v City of Lansing,* 403 Mich 124, 133; 268 NW2d 230 (1978).

tion, there was evidence that the design did not meet the 1957 standards.

Fourth, defendant claims that the trial court erred as a matter of law in holding defendant responsible under the nuisance theory. The trial court determined that the light pole location and shoulder width constituted both a nuisance per se and an intentional nuisance in fact, both of which constitute exceptions to governmental immunity. The court reasoned that:

"While a light pole, by itself, may not be a nuisance per se, an obstruction encroaching into a refuge and emergency lane on an interstate freeway is a nuisance per se. The result to the McKee family would have been the same if the obstruction was a bridge abutment, steel signpost, flagpole or any other roadside obstruction of like character. It is not a light pole that damaged the McKee family, it was the nature of the light pole, *i.e.,* a fixed object encroaching into the emergency lane. A highway roadside obstruction is a structure whereby its very nature is a nuisance per se at all times and under any circumstances on I-94, regardless if it is located at or near the Mt. Elliott overpass or the Frontenac overpass."

As Justice FITZGERALD described in *Rosario v City of Lansing,*[10] a nuisance per se is " ' "an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surrounding" ' ".[11] While we do not agree with the trial court that the light pole location and shoulder width constituted a nuisance per se under the above definition, we fail to find error in the court's finding that the combined

[10] 403 Mich 124; 268 NW2d 230 (1978).

[11] 403 Mich 133, citing *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959), citing with approval 66 CJS, Nuisances, § 3, pp 733-734.

conditions on the roadway constituted a nuisance in fact. In support of this conclusion, the trial judge made detailed findings of fact. Among those noted were that, while the parabolic design of the road caused greater water accumulation in the side lanes, no signs were posted warning motorists of a need for decreased speed to avoid the risk of hydroplaning. There was detailed testimony on highway standards from defense experts, who noted that the recommended unobstructed shoulder width in 1957 was not less than ten feet wide and that the recommended width increased in successive years. The court found the usable shoulder to be six feet, three inches on this particular section of I-94. There was also testimony from a Public Lighting Commission employee that the PLC could easily have complied with orders to set the light poles back from the pavement in 1957.

Liability was additionally based on the fact that the curb was a rolled, mountable curb. The light pole, according to testimony, encroached on the shoulder 13 inches but was only designed to do so by 11 inches. These and other fact-findings demonstrate that, based on the evidence, the court could correctly hold that the conditions constituted a nuisance in fact under the following definition given by Justice Fɪᴛᴢɢᴇʀᴀʟᴅ in *Rosario, supra:*

" ' "Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property." ' "[12]

The trial court noted that to come within the nuisance exception to governmental immunity the

[12] 403 Mich 133.

nuisance must be an intentional one: "If the creator intended to bring about the conditions which are found to be a nuisance it is an intentional nuisance." The trial court further found that the placement of the poles was intended, saying:

"Since 1958, (the time the poles were located and exposed to traffic) the state has known that because of the inherently dangerous propensities of roadside obstacles, and the use the motoring public has made of the emergency or refuge lanes that the defect was a nuisance (i.e., had the natural tendency to create danger and inflict injury), and failed to abate it, all to the plaintiff's great injury and damage."

The court also found defendant to be liable under MCL 691.1402; MSA 3.996(102) in creating the condition, failing to warn plaintiffs of the danger and failing to remove the danger. In *Hall v Dep't of State Highways*,[13] this Court enumerated some of the relevant factors for § 1402(102) liability:

"We do not view the above authorities as requiring the state to reconstruct a highway whenever a safety advancement is made. Rather, the focus of MCL 691.1402; MSA 3.996(102) is to require government agencies to maintain highways in 'reasonable repair' and to provide roads which are 'reasonably safe and fit for travel'. The determination of reasonableness must necessarily be made by overview of the factors of a given case, such as the danger imposed by the defective article or lack of safety device, the increase in safety provided by the new device or design, the cost of repair or installation, and others."

We believe that the trial court's findings support the conclusion that defendant was liable under the

[13] *Hall, supra,* 109 Mich App 605.

statute. And, while the court failed to specifically assign proximate cause to the parabolic design of the road and to determine whether the design was unreasonably unsafe, because the court's findings of intentional nuisance and negligence are supported by the record, we affirm the trial court's determination as to liability.

The two final issues that must be considered concern damages. First, defendant contends that the lower court erred in its award of damages by awarding excessive damages with respect to the lost earning capacity to Kimberly McKee, by failing to reduce the damage award to its present value, by incorrectly ruling that no reduction need be made for taxes because the taxes would be offset by inflation, and by awarding excessive damages for noneconomic loss.

Testimony disclosed that the injury to Kimberly's brain was extensive and that she was totally unemployable and required round-the-clock care as a result of the accident. There was also testimony that prior to the injury she was considered to have the genetic potential, environmental background, and intellectual capacity to attain a college education. Initially, the court awarded Kimberly a total of $5,124,160 for future wage loss, future medical treatment, and pain and suffering. This award was reduced to $4 million at a hearing held February 10, 1981. However, the court did not attribute the reduction to a reducing of the award to its present value.

In *Precopio v Detroit*,[14] the Supreme Court held that damage awards in non-jury trials are governed by GCR 1963, 517.1, which tracks the language of the "clearly erroneous" rule of FR Civ P 52(a). The Court stated:

---

[14] 415 Mich 457, 465-466, fn 11; 330 NW2d 802 (1982).

"In reappraising damage awards, this Court has followed a rule of just compensation based upon the evidence. To sustain his burden of proof, a plaintiff must establish injury and the appropriate compensation therefor with reasonable certainty."[15]

*Precopio* went on to hold that a reviewing court must offer " 'something more tangible than a difference of opinion as to amount' before it sets aside a non-jury award as clearly erroneous".[16] Analogous cases may be considered to determine whether the amount awarded for pain and suffering was excessive.

Considering the evidence as a whole, we find that substantial testimony and findings of fact by the trial judge concerning Kimberly's injuries support the award. Cases cited by plaintiffs indicate that the award was sufficiently within range with awards for equally serious, though dissimilar, injuries.[17]

It is clear in Michigan that damages for future losses must be reduced to present value.[18] Because a substantial portion of the award was for future compensation, we believe failure to reduce the award to present value pursuant to SJI 34.03 (now

[15] 415 Mich 470.

[16] 415 Mich 471.

[17] Compare *Pippen v Denison Division of Abex Corp*, 66 Mich App 664; 239 NW2d 704 (1976), *lv den* 399 Mich 823 (1977), where $1.25 million was awarded to plaintiff for loss of his arm and $.5 million to plaintiff's wife, and *Radloff v Michigan*, 116 Mich App 745; 323 NW2d 541 (1982), where almost $7.5 million was awarded where the 23-year-old plaintiff was rendered a quadriplegic as a result of injuries. However, it should be noted that *Radloff* has been remanded for reconsideration in light of *Precopio v Detroit*, 415 Mich 457; 330 NW2d 802 (1982). See 417 Mich 894; 330 NW2d 692 (1983).

[18] *Currie v Fiting*, 375 Mich 440, 453-454; 134 NW2d 611 (1965); *Freeman v Lanning Corp*, 61 Mich App 527, 529; 233 NW2d 68 (1975); *Harper v National Shoes, Inc*, 98 Mich App 353, 357; 296 NW2d 1 (1979); *Neal v Friendship Manor Nursing Home*, 113 Mich App 759, 767; 318 NW2d 594 (1982).

SJI 53.03) was error. The court's opinion stated that "any normal reduction to present value is offset by inflation". No finding was made as to the current inflation rate to illustrate that this was indeed the case.[19]

In *Freeman v Lanning Corp,*[20] this Court rejected the argument that the failure to make the reduction to present value was rendered harmless by inflation. SJI 53.03 prescribes the formula for reduction to present value. While inflation is a factor that may be considered in assessing damages,[21] we do not believe a court may employ it to omit the present value reduction. This would have the effect of ignoring the instruction. We, therefore, remand for reduction to present value.

The final argument to be considered is plaintiffs' counterclaim contending that it was error to refuse to award prejudgment interest pursuant to MCL 600.6013; MSA 27A.6013. We believe this argument to be without merit and deny the counterclaim.[22]

In summary, we affirm the Court of Claims as to liability and, as to damages, remand in order that the proper reduction to present value be made.

Affirmed in part but remanded.

---

[19] See *Tiffany v The Christman Co,* 93 Mich App 267, 280; 287 NW2d 199 (1979).

[20] *Freeman, supra.*

[21] 61 Mich App 531.

[22] *Henley v Michigan Dep't of State Highways,* 128 Mich App 214; 340 NW2d 72 (1983).