ROSEN *v.* MANN.

1. Covenants — Easements — Injunction — Responsibility of
    Landlord.

> Where the owners, in mutual covenants running with the
> land, agreed to maintain a five-foot strip as a passage-
> way, each agreeing to keep his half clean and in con-
> dition for use for such purpose, the owner who was in
> joint possession with his tenant was properly made re-
> sponsible for the acts of his tenant in proceedings to
> restrain obstruction of the passageway.

2. Easements—Passageway—Right of Owner to Use for Other
    Purposes.

> The owner of the fee subject to an easement for a pas-
> sageway is entitled to the reasonable use of the land
> compatible with and subservient to the easement.

Appeal from Wayne; Goff (John H.), J.    Submitted
February 1, 1922.    (Docket No. 106.)    Decided
October 2, 1922.

Bill by Aaron D. Rosen and another against Charles
F. Mann to enjoin the obstruction of a passageway.
Defendant filed an answer in the nature of a cross-
bill asking injunctive relief against plaintiffs.    From
a decree enjoining both defendant and plaintiffs, de-
fendant appeals.    Affirmed.

*McKee Robison,* for plaintiffs.

*Charles F. Delbridge* (*W. Leo Cahalan,* of counsel),
for appellant.

STEERE, J.    Plaintiffs owned a lot at the southwest
corner of Woodward and Forest avenues in the city
of Detroit with a frontage of approximately 100 feet
on Woodward and 131 feet on Forest avenue.    On

April 18, 1908, they sold out of this to defendant Mann the immediate corner with a frontage of 48½ feet on Woodward and 67½ feet on Forest avenues, providing in the conveyance for a five-foot passageway leading from Forest avenue on the west side of the property sold defendant as follows:

"And it is further covenanted and agreed by and between the parties hereto, and made a part of the consideration for the giving of this deed, that the westerly 2½ feet of property above described, and a strip of land 2½ feet wide along the westerly side of the property above described, shall be forever a right of way for the parties hereto, their heirs and assigns, their servants and tenants and the occupants, from time to time, of the premises above described, and the premises next adjoining the same to the west and south, at all times freely to pass and repass, on foot, with loads or otherwise, to and fro, between the premises herein described, the premises next adjoining and the highway or street. The parties hereto shall each pave, repair and keep clean that part of the right of way owned by them. Said parties shall not use said land for any other purpose than a passageway, which said covenant shall be deemed to run with the land."

Several years before this litigation Mann had erected on his property a business block fronting 65 feet on Forest avenue, with two stores below and apartments above, covering the entire lot except 2½ feet on the west side, for the agreed passageway, while plaintiffs had built on the L-shaped property adjoining, which they yet owned, a three-apartment terrace just west of defendant's block fronting on Forest avenue, leaving 2½ feet for their part of the passageway, and a business block directly south of defendant's, with two stores fronting on Woodward avenue and extended the five-foot passageway south along the back of their block to their south line, thence west to an alley. The passageway between these

parties was apparently paved as agreed, since no complaint on that score is made by either party.

This suit was begun for an injunction to restrain defendant and his tenant from obstructing said five-foot space between the two buildings by using it for other purposes than a passageway, the bill alleging as grounds therefor that:

"The said Charles F. Mann and Blessed Lunch Co. have been and are using the said passageway for storing boxes, garbage cans, cans, ashes, rubbish, (etc.), * * * and, further, in the store occupied by the Blessed Lunch Co. there has been constructed a large pipe extending out and into the passageway and upwards for a great many feet, known as an air-pipe, and another pipe known as a smoke-pipe."

Answers in denial were filed with affirmative allegations as by cross-bill that plaintiffs and their tenants were themselves guilty of annoying and obstructing things of the kind complained of and asked injunctive relief against them.

After hearing the evidence taken in open court, the presiding judge was of opinion that both parties had been guilty in varying degrees of the obstructing acts reciprocally charged, and that under the conditions which had developed the interests of both parties would best be conserved by granting restraining relief against the respective owners of the property, decreeing:

"That the plaintiffs, Aaron D. Rosen and Lottie Rosen, and their heirs and assigns, and the defendant Charles F. Mann, his heirs and assigns, their respective attorneys, solicitors and agents, and every and each of them be, and they are hereby severally forever restrained and enjoined from putting or placing in said five-foot strip of ground, constituting said passageway, * * * or suffering or permitting their agents, servants, employees, or their tenants, * * * to put or place any garbage cans, ash cans, * * * or from in any way using any portion of the ground

comprising said passageway in any manner or for any purpose except such as is necessarily incidental to and an integral part of an act of passage to and fro in and over said five-foot strip of ground."

Certain other matters relative to pleadings and defendant's tenants were disposed of which were not appealed from and are immaterial here, but defendant Mann appeals from the decree, contending the court was in error in so framing the injunction as to hold him responsible for the conduct of his tenants, that there were no acts of his constituting an unreasonable use of the passageway, and the wording of the injunction is too rigid in restraining him from *in any way* using any portion of said passageway, even the 2½ feet belonging to him, in any manner or for any purpose except such as is incidental to and an *integral part of an act of passage* along the five-foot strip.

It may in fairness be conceded that Mann was personally amongst the least of the offenders on either side, whether owners or tenants, although the evidence is persuasive that he was a participant at times to a material degree; but the more meritorious question is his responsibility under the covenants of his deed for the conduct of his tenants in the particulars charged by plaintiffs.

Relying upon the broadly stated general rule that the landlord is not responsible for the acts of his tenants, counsel for defendant cites various decisions relating mostly to cases of nuisance sustaining that general doctrine, including *Samuelson* v. *Mining Co.,* 49 Mich. 171 (43 Am. Rep. 456), and *Stewart* v. *Lawson,* 199 Mich. 497 (L. R. A. 1918D, 394), and Jones on Landlord & Tenant, § 606, which lays down the rule that if the premises leased can be used by the tenant for the purpose intended by the landlord, as shown by the lease or condition of the property, and the acts of the tenant unauthorized by the landlord create a

nuisance, "after he has entered into occupation as a tenant, the landlord is not liable."

In the *Samuelson Case* a miner was killed by falling rock in a mine owned by defendant while working for contractors in possession of and operating the mine on a tonnage basis. In discussing that situation it was said by Justice COOLEY:

"As between landlord and tenant the party presumptively responsible for a nuisance upon the leased premises is the tenant. * * * Mere ownership of the mine can certainly impose no such duty (to guard against danger to the miners). The owner may rent a mine, resign all charge and control over it, and at the same time put off all responsibility for what may occur in it afterwards. If he transfers no nuisance with it, and provides for nothing by his lease which will expose others to danger, he will from that time have no more concern with the consequences to others than any third person. * * * Legal wrongs must spring from neglect of legal duties."

In the *Stewart Case* a tenant in a four-family flat under a lease for a year left before his lease expired and sued his landlord to recover moneys paid in advance on his rent, claiming eviction by reason of offensive conduct and language of other tenants in the building, and it was held there could be no recovery under the rule quoted from Jones on Landlord & Tenant, § 360, as follows:

"From the doctrine that the landlord is not responsible for the acts of strangers, it would follow that an act done by one tenant in a tenement house without the authority, consent or connivance of the landlord, cannot be treated as an eviction by other tenants."

The underlying reason for the general rule relied on by defendant here and applied in such cases is that after leasing and surrendering the premises to the tenant the landlord loses all control over them, or, as stated in 16 R. C. L. p. 1095:

"A tenant or occupant of premises having the entire control thereof is, so far as third persons are concerned, the owner. He is, therefore, as already stated, usually deemed to be *prima facie* liable for all injuries to third persons occasioned by the condition of the demised premises."

In this instance there was no exclusive right of possession or use, or control of the passageway by any one of the owners or their tenants. All had a right in common to use it for the purpose of the easement with which it was burdened. The respective owners of the 2½ feet each covered by it had covenanted to "each pave, repair and keep clean that part of the right of way owned by them." The testimony is persuasive that Mann was more attentive to his legal duties in that respect than Rosen. Mann kept a porter to care for his building who at times cleared the snow out of the 5-foot strip and cleaned it up in other ways, while the record fails to disclose any physical efforts in that direction by Rosen or his tenants. In fact his activities in that connection seem to have run to preventing Mann from getting "away from the restrictions on the building," as he construed them. He first insisted that Mann's eave-trough, or down-pipe put on the outside of his building at the rear, "got away from the restriction" and required him to change it to the inside, and also complained of pipes extending up the wall and above the roof of Mann's building from a point 15 feet above where they would interfere with use of the strip as a passageway. Having with thrifty vision extended the passage back of his own block through his property to connect with an alley, he was able also to collect toll for the privilege of storing filled garbage cans on his own premises available to the garbage collector, in which business activity he realized at one time as high as $15 per month from one of Mann's tenants,

who as a defendant here unsuccessfully sought restitution by cross-bill, and incidentally created a nuisance in that locality as defendant claims.

On this issue, to hold these owners responsible for acts of their tenants is but incidental to their mutual covenants running with the land to each keep his half of the 5-foot strip clean and in condition for use as a passageway according to the provisions of the easement upon it which they jointly created. Each yet separately owns in fee 2½ feet of the passageway subject to that easement, entitled to use it for any legitimate purpose, above or below, which does not interfere with or detract from the granted "full and free use of and along the 5-foot strip for themselves, their assigns, heirs, servants, tenants, * * * at all times freely to pass and repass, on foot, with loads or otherwise, to and fro, between the premises herein described, the premises next adjoining and the highway or street."

We do not construe the injunction granted as denying the owner of the fee the right of reasonable use compatible with and subservient to the easement, certain stringent language of which it closely follows. On this record it was impractical and inadvisable for the court to cover in detail all possible conditions and contingencies which might arise. It was conceded that just at the time of hearing there was no ground of complaint, a condition attributed by Rosen to the salutary effect of the pendency of this suit. Apparently not unmindful of the rights of the fee owner as held in *Grinnell Bros.* v. *Brown,* 205 Mich. 134, the court provided in the decree granting the injunction that no proceedings to enforce its provisions should be entertained until after notice in writing to the party claimed to be violating it, "stating specifically the respect in which it is claimed that said party is in default in observing and obeying the terms of

this decree, coupled with a demand that such party remedy the condition which it is claimed constitutes a violation of the terms of this decree," etc.    These are strictly proceedings in equity to be disposed of as they are presented on equitable grounds.

"Before a strict literal performance of the restriction will be exacted by a court of equity, it must affirmatively appear that it is necessary to effectuate the purpose, scheme or intent of the parties in making the restriction, and where the purpose and intent of the parties is made effectual by a substantial compliance with the restriction such a compliance will satisfy the requirements of those rules of equity upon which the right to enforce compliance is based.    Courts of equity will not strictly enforce, according to the letter, mere naked legal rights against a party who has substantially performed the conditions, and, in so doing, has made effectual the scheme and purpose and intent to be accomplished through the instrumentality of the restrictions and conditions." *Melson* v. *Ormsby,* 169 Iowa, 522 (151 N. W. 817).

The decree is affirmed, with costs to plaintiffs.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.