# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

## SHOLBERG v TRUMAN

Docket No. 146725. Argued on application for leave to appeal December 12, 2013. Decided June 10, 2014.

Terri A. Sholberg died when the car she was driving hit a horse standing in the road. Diane K. Sholberg, as personal representative of her estate, brought an action in the Emmet Circuit Court against Daniel Truman (the owner of the horse, which had escaped from its stall) and Robert and Marilyn Truman (the title owners of the farm that Daniel Truman operated). Other than being the title owners, Robert and Marilyn Truman (hereafter "defendants") had nothing to do with the farm or the animals on it. Plaintiff presented evidence of at least 30 instances of animal elopement near the farm between 2003 and 2010, each allegedly creating a hazard on surrounding public roads. The court, Charles W. Johnson, J., entered a default judgment against Daniel Truman, but granted summary disposition in defendants' favor, concluding that they could not be held liable for a public nuisance because they were not in possession of the property. The Court of Appeals, TALBOT, P.J., and BECKERING and M. J. KELLY, JJ., affirmed in part and reversed with regard to the public nuisance claim in an unpublished opinion per curiam, entered November 15, 2012 (Docket No. 307308), holding that defendants' ownership of the property from which the alleged nuisance arose was sufficient to allow a nuisance action against them. Plaintiff applied for leave to appeal with respect to an issue concerning violations of the Equine Activity Liability Act, MCL 691.1661 *et seq*., and defendants filed a separate application for leave to appeal on the nuisance claim. The Supreme Court denied plaintiff's application, 493 Mich 974 (2013), but ordered and heard oral argument on whether to grant defendants' application for leave to appeal or take other action, 494 Mich 867 (2013).

In an opinion by Justice MARKMAN, joined by Chief Justice YOUNG and Justices KELLY, ZAHRA, and MCCORMACK, the Supreme Court *held*:

The title owner of real property cannot be held liable for a public nuisance that arose from that property when someone other than the title owner was in actual possession of the property, exercised control over the property, and created the alleged nuisance.

1. A public nuisance is a tort that involves the unreasonable interference with a right common to all members of the general public. To be held liable for the nuisance, a defendant must have possession or control of the land. Ownership alone is not dispositive. The person in

possession is normally in a position of control and thus normally best able to prevent any harm to others.

2. In this case, defendants merely owned the property. They never possessed or exercised any control over the property and had not even visited it in more than a decade. They had no contact with Daniel Truman, the person who was in actual possession and exercised control over the property. Defendants also did not own, possess, or control the horse that caused the accident or any other horse on the property, and did not even know that Daniel Truman owned the horse. There was no evidence that defendants knew or had reason to know that Daniel Truman's animals had been escaping the property when the accident happened. Because defendants did not control or possess the property or the horse, there was no basis for imposing tort liability on them for a public nuisance. Daniel Truman was the person best able to prevent any harm to others, and given that defendants had resigned all charge and control over the property to him, he was the person exclusively responsible for the alleged public nuisance he created on the property.

Court of Appeals' judgment reversed in part with respect to public nuisance claim; trial court order granting defendants summary disposition reinstated.

Justice CAVANAGH, concurring, agreed with the majority's result for the reasons stated in the conclusion of its opinion. Defendants were entitled to summary disposition because they were not in possession of the property, did not have control over the property, and did not create the alleged nuisance.

Justice VIVIANO, concurring in part and dissenting in part, agreed that defendants were entitled to dismissal because they were not liable for the nuisance, but wrote separately because he disagreed that the case could be decided as a matter of law on the issue of defendants' control over the land from which the nuisance arose. Justice VIVIANO believed that both control and knowledge must be shown before imposing liability on absentee owners like defendants. Control over property may be established through ownership or otherwise. Because control can be established through proof of ownership, he disagreed with the proposition that defendants could not be liable as a matter of law merely because they owned the property. There was evidence that someone other than defendants was in active control of the property. However, Justice VIVIANO concluded that there was a question of fact whether defendants, even though absentee owners, retained sufficient control over the land to be held liable for the alleged nuisance. He pointed to several facts that could support such a finding: defendants held sole title to the property; defendants supplied the financing to purchase the property; defendants maintained insurance on the property; and defendants took out a mortgage on the property, the terms of which required defendants to maintain the property and prohibited them from permitting a nuisance on the property, abandoning the property, or leaving it unattended. He nonetheless would have held that summary disposition in defendants' favor was proper because, as the majority recognized, defendants had no knowledge of the nuisance on the premises.

©2014 State of Michigan

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
                       Stephen J. Markman
                       Mary Beth Kelly
                       Brian K. Zahra
                       Bridget M. McCormack
                       David F. Viviano

FILED June 10, 2014

STATE OF MICHIGAN

SUPREME COURT

DIANE K. SHOLBERG, as Personal
Representative for the Estate of Terri A.
Sholberg,

      Plaintiff-Appellee,

v                                                                No. 146725

ROBERT TRUMAN and MARILYN
TRUMAN,

      Defendants-Appellants,

and

DANIEL TRUMAN,

      Defendant.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

The issue in this case is whether title owners of real property may be held liable for a public nuisance that arose from that property, where someone other than the title owners is in possession of the property, is exercising control over the property, and is the

one who created the alleged nuisance. We hold that title owners of the real property cannot be held liable for a public nuisance under such circumstances. Therefore, we reverse that portion of the Court of Appeals' judgment that held to the contrary and reinstate the trial court's order granting defendants' motion for summary disposition.

## I. FACTS AND HISTORY

In 2010, Terri Sholberg while driving her car hit a horse that was standing in the road and died as a result. Plaintiff, as personal representative of her estate, brought this action against Daniel Truman, the owner of the horse that had escaped from its stall on the farm,[1] and his brother and sister-in-law, Robert and Marilyn Truman ("defendants"), the title owners of the farm operated by Daniel Truman.[2] Other than being the title owners, defendants have nothing to do with the farm or with any of the animals on the farm, including the horse struck by plaintiff's decedent. Plaintiff has presented evidence of at least 30 instances of animal elopement[3] near the farm between 2003 and 2010, each

---

[1] The horse had been stored in a three-walled enclosure with a heavy gate, but the gate had been secured with baling twine that had failed.

[2] Robert and Daniel Truman's mother sold the property to Daniel Truman and his now ex-wife, Linda Truman. When Daniel and Linda divorced in 1989, the divorce decree required Daniel to pay off his wife's interest in the property. In order to have the cash to do so, Daniel borrowed money from his brother, Robert. Presumably because of the financial assistance that defendants provided Daniel, Linda signed the deed to the property over to defendants. Daniel repaid about $6,000 of the $15,000 that he owes defendants, but has not made a payment to defendants in several years, although Daniel does pay the property taxes. Defendants had a land contract drawn up but never obtained Daniel's signature on it. Defendants and Daniel do not speak with one another and have not done so for the past 10 years. Defendants have also not been on the property in the past 10 years.

[3] "Elope" in this legal context means "to flee; escape." *Random House Webster's*

of which allegedly created a hazard on the surrounding public roads.[4] Marilyn Truman testified that no later than 2000, she received two or three telephone calls from people looking for Daniel Truman because his animals were loose.

A default judgment was entered against Daniel Truman. However, the trial court granted defendants' motion for summary disposition, concluding that they could not be held liable for public nuisance because they were not in possession of the property. The Court of Appeals reversed with regards to the public nuisance claim,[5] holding that "the Trumans owned the Property from which the alleged nuisance arose, which is sufficient to bring a nuisance action against them." *Sholberg v Truman*, unpublished opinion per curiam of the Court of Appeals, issued November 15, 2012 (Docket No. 307308). This Court then directed that oral argument be heard on defendants' application for leave to appeal and directed the parties to address "whether, and under what circumstances, a property owner who is not in possession of the property and does not participate in the conduct creating an alleged nuisance may be liable for the alleged nuisance," *In re Sholberg Estate*, 494 Mich 867 (2013), and argument was heard on December 12, 2013.

---

*College Dictionary* (1992).

[4] It is unknown whether all of these elopements involved animals from the property at issue here.

[5] Plaintiff also claimed negligence and violations of the Equine Activity Liability Act, but the trial court subsequently dismissed those claims and the Court of Appeals affirmed. Plaintiff filed an application for leave to appeal which this Court denied, and thus those claims are not before this Court.

## II.  STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Malpass v Dep't of Treasury*, 494 Mich 237, 245; 833 NW2d 272 (2013).  The interpretation and applicability of a common-law doctrine is also a question that is reviewed de novo.  *People v Petty*, 469 Mich 108, 113; 665 NW2d 443 (2003).

## III.  ANALYSIS

As an initial matter, the lower courts and the parties all assumed that incidents of animal elopement can constitute a public nuisance, and thus we too will assume, without deciding, that incidents of animal elopement can constitute a public nuisance.[6]  "A public nuisance involves the unreasonable interference with a right common to all members of the general public." *Adkins v Thomas Solvent Co*, 440 Mich 293, 304 n 8; 487 NW2d 715 (1992).  "No better definition of a public nuisance has been suggested than that of an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects." *Garfield Twp v Young*, 348 Mich 337, 341-342; 82 NW2d 876 (1957) (quotation marks and citation omitted).  "There is no doubt that nuisance is a tort . . . ." *Pohutski v City of Allen Park*, 465 Mich 675, 685; 641 NW2d 219 (2002).  "In general, even though a nuisance may exist, not all actors are liable for the damages stemming from the condition." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 191; 540 NW2d 297 (1995).  "A defendant held liable

---

[6] Because defendants failed to raise this issue at the trial court, this issue is not properly before this Court.  See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("[A] litigant must preserve an issue for appellate review by raising it in the trial court. . . .  [G]enerally 'a failure to timely raise an issue waives review of that issue on appeal.' ") (citation omitted).

4

for the nuisance must have possession or control of the land." *Wagner v Regency Inn Corp*, 186 Mich App 158, 163; 463 NW2d 450 (1990); see also *Stevens v Drekich*, 178 Mich App 273, 278; 443 NW2d 401 (1989) ("It requires that the defendant liable for the nuisance have possession or control of the land."); 19 Mich Civ Jur, Nuisances, § 1, p 63 ("Liability for nuisance . . . requires that the defendant liable for the nuisance have possession or control of the land on which the condition exists or the activity takes place.").

As the Court of Appeals explained in *Merritt v Nickelson*, 80 Mich App 663, 666-667; 264 NW2d 89 (1978):

> To argue, as plaintiff does, that a co-owner's right to possession of the premises is sufficient to hold that co-owner liable for all injuries on the premises is to be simplistic. The issue of control is preeminent.
>
> > "[The] rights and liabilities arising out of the condition of land, and activities conducted upon it, have been concerned chiefly with the possession of the land * * * for the obvious reason that the man in possession is in a position of control, and normally best able to prevent any harm to others." Prosser, Law of Torts (3d ed), § 57, at 358. (Footnote omitted.)
>
> "Possession" differs from the "right to possession" and "ownership" because of the concept of control. Possession is the detention and control of anything which may be the subject of property, for one's use and enjoyment. Blacks Law Dictionary (4th ed), at 1325. The mere "right to possession" does not necessarily entail the control inherent in the nature of "possession."
>
> It has been recognized in this state that control and possession are the determinative factors in the imposition of liability.
>
> > "It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to

> prevent the injury and therefore rests primarily upon him who
> has control and possession." [Citations omitted.]

This Court subsequently affirmed that decision, holding that a co-owner of land cannot be held liable where he or she has not "exercise[d] her right to possession and control over the property" because "[w]hen one co-owner of land cedes possession and control of the premises to her co-owners, the law is satisfied to look to those co-owners actually in control for liability for injuries to third persons." *Merritt v Nickelson*, 407 Mich 544, 554; 287 NW2d 178 (1980).

> Ownership alone is not dispositive. Possession and control are certainly incidents of title ownership, but these possessory rights can be "loaned" to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility. [*Id*. at 552-553.]

See also *Musser v Loon Lake Shores Ass'n*, 384 Mich 616, 622; 186 NW2d 563 (1971) ("It is a general principle of tort law that a person is liable only as he participates in an activity giving rise to a tort. Mere co-ownership of land standing alone will not subject a person to liability for torts committed in the land by the other co-owners.").[7]

In the landlord/tenant context (which bears considerable resemblance to the context we have here), this Court has made it clear that generally a landlord is not liable for a nuisance created by the tenant. As Justice COOLEY explained in *Samuelson v Cleveland Iron Mining Co*, 49 Mich 164, 171; 13 NW 499 (1882):

> It is not pretended that the mere ownership of real estate upon which there are dangers will render the owner liable to those who may receive

---

[7] Although *Merritt* and *Musser* involved premises liability causes of action, the general principles of tort liability articulated in those opinions are just as relevant in the context of a nuisance cause of action. Tort law generally does not favor shifting liability from a party directly responsible for giving rise to the tort to a mere title holder who lacked actual possession and control of the land.

6

injury in consequence.  Some personal fault must be involved, or neglect of duty, before there can be a personal liability.  As between landlord and tenant the party presumptively responsible for a nuisance upon the leased premises is the tenant.  But this might be otherwise if the lease itself contemplated the continuance of the nuisance, for in that case the personal fault of the landlord would be plain[.]  [Citations omitted.]

The question at issue in *Samuelson* was "whether a personal duty to guard against danger to the [iron] miners was still incumbent upon the defendant as owner of the mine, and was continuous while the mine was being worked by the contractors."  *Id*. at 173.  This Court held:

Mere ownership of the mine can certainly impose no such duty.  The owner may rent a mine, resigning all charge and control over it, and at the same time put off all responsibility for what may occur in it afterwards.  If he transfers no nuisance with it, and provides for nothing by his lease which will expose others to danger, he will from that time have no more concern with the consequences to others than any third person.  If instead of leasing he puts contractors in possession the result must be the same if there is nothing in the contract which is calculated to bring about danger.  But if, on the other hand, he retains charge and control, and gives workmen a right to understand that he is caring for their safety and that they may rely upon him to guard against negligent conduct in the contractors and others, his moral accountability for their safety is as broad as it would be if he were working the mine in person; and his legal accountability ought to be commensurate with it.

But we do not find that in this case there was any such retention of charge and control, or that the arrangement between the contractors and the mining company gave to workmen any assurance that the company would protect them against the negligence of the contractors and their servants. [*Id*. at 173-174.]

The general rule is that if "the acts of the tenant unauthorized by the landlord create a nuisance 'after he has entered into occupation as a tenant, the landlord is not liable.' " *Rosen v Mann*, 219 Mich 687, 690-691; 189 NW 916 (1922) (citation omitted).  "[I]n the absence of a contract duty on the part of the owner or landlord, the tenant, as

7

between himself and the landlord, is bound to keep the leased premises in repair [and] the owner is not liable for damages to third persons for injuries arising from the neglect of the tenant to repair." *Maclam v Hallam*, 165 Mich 686, 693; 131 NW 81 (1911); see also *Harris v Cohen*, 50 Mich 324, 325; 15 NW 493 (1883) ("The case was not allowed to go to the jury, on the ground that the defendant was not personally in possession, and that she was not liable, as the case stood, for the neglect of her tenant."); *Fisher v Thirkell*, 21 Mich 1, 12-13 (1870) ("[T]he owners, being out of possession and not bound to repair, are not liable in this action for injuries received in consequence of the neglect to repair."); *Merritt*, 80 Mich App at 667 ("[O]wners of land . . . do not share liability when injury or negligence is attributable to the independent act of a single tenant who has exclusive control of the premises.").

"The underlying reason for the general rule . . . is that after leasing and surrendering the premises to the tenant the landlord loses all control over them." *Rosen*, 219 Mich at 691. "It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to prevent the injury and therefore rests primarily upon him who has control and possession." *Dombrowski v Gorecki*, 291 Mich 678, 681; 289 NW 293 (1939).

> A tenant or occupant of premises having the entire control thereof is, so far as third persons are concerned, the owner. He is, therefore, as already stated, usually deemed to be prima facie liable for all injuries to third persons occasioned by the condition of the demised premises. [*Rosen*, 219 Mich at 692 (quotation marks and citations omitted).]

Although this Court has consistently held that control is required in order to hold a defendant liable for a nuisance, in dicta the Court of Appeals has articulated this rule in

such a way that suggests that ownership alone may be sufficient to impose liability even if someone other than the owner exercises control over the property. To wit, in *Cloverleaf*, 213 Mich App at 191, the Court of Appeals stated:

> A defendant is liable for a nuisance where (1) the defendant created the nuisance, (2) the defendant *owned or controlled* the land from which the nuisance arose, or (3) the defendant employed another person to do work from which the defendant knew a nuisance would likely arise. [Emphasis added.]

The Court held that because the defendant did not own or control the property, the defendant could not be held liable. *Cloverleaf* cited *Gelman Sciences, Inc v Dow Chemical Co*, 202 Mich App 250, 252; 508 NW2d 142 (1993), for its articulation of the rule. *Gelman* did articulate this same rule, but held that because the defendant did not own or control the property, the defendant could not be held liable.

*Gelman* in turn cited *Radloff v Michigan*, 116 Mich App 745, 758; 323 NW2d 541 (1982), for its articulation of the rule. While *Radloff* did articulate this same rule, it also held that "[o]wnership alone is not dispositive." *Id*. at 755, quoting *Merritt*, 407 Mich at 552. *Radloff* concluded that because "the defendants both owned *and* controlled the property," they could be held liable. *Radloff*, 116 Mich App at 759 (emphasis added). *Radloff* also held that *Merritt* was distinguishable because the defendants in *Merritt* were "mere landowners." *Id*. at 756.

*Radloff* cited *Stemen v Coffman*, 92 Mich App 595, 597-598; 285 NW2d 305 (1979), for its articulation of the "owned or controlled" rule. *Stemen* did articulate this rule, but held that because the defendants did not own or control the property, they could

9

not be held liable. In support of this proposition, *Stemen*, 92 Mich App at 598, cited 58 Am Jur 2d, Nuisances, § [95],[8] p 616, which provides:

> To be liable for nuisance, it is not necessary for an individual to own the property on which the objectionable condition is maintained, but rather, liability for damages turns on whether the defendant controls the property, either through ownership or otherwise.[9] A person is liable if he or she knowingly permits the creation or maintenance of a nuisance on premises of which he or she has control even though such person does not own the property or even though such person is not physically present, such as where he or she is an absentee owner. A party who has no control over the property at the time of the alleged nuisance cannot be held liable therefor.

While this language indicates that an absentee owner may be held liable, it does not state that mere land ownership may give rise to liability. That is, even the treatise cited above and referred to by *Stemen* indicates that something more than mere ownership is required-- the absentee landowner must have "knowingly permit[ted] the creation or maintenance of a nuisance on [the] premises." *Id*.[10]

---

[8] *Stemen* actually cited § 49, but this language can only be found in § 95, pp 642-643.

[9] See also *Beard v Michigan*, 106 Mich App 121, 126; 308 NW2d 185 (1981), citing *Stemen*, 92 Mich App at 598 ("We have previously held that liability for damage caused by a nuisance turns upon when the defendant was in control, either through ownership or otherwise."); *Detroit Bd of Ed v Celotex Corp*, 196 Mich App 694, 709-710; 493 NW2d 513 (1992), citing *Radloff*, 116 Mich App at 758 ("[N]uisance liability may be imposed where . . . the defendant owned or controlled the property from which the nuisance arose . . . ."); *Mitchell v Dep't of Corrections*, 113 Mich App 739, 742; 318 NW2d 507 (1982), citing *Stemen*, 92 Mich App at 598 ("Unless the defendant has created the nuisance, owned or controlled the property from which it arose or employed another to do work knowing it would likely create a nuisance, liability may not be imposed under a nuisance theory."); *Coburn v Pub Serv Comm*, 104 Mich App 322, 327; 304 NW2d 570 (1981), quoting *Stemen*, 92 Mich App at 598 ("We have found no authority imposing liability for damage caused by a nuisance where the defendant has not either created the nuisance, owned or controlled the property from which the nuisance arose, or employed another to do work which he knows is likely to create a nuisance.").

None of the Court of Appeals cases cited above involved a situation in which the Court of Appeals imposed liability on a defendant on the basis of his or her mere land ownership. Instead, each of these cases involved situations in which the Court of Appeals held that the defendants either could *not* be held liable because they did not own or control the property or *could* be held liable because they did both own *and* control the

---

[10] As recognized by the partial dissent, "this Court has never explicitly held that knowledge is a required element of a nuisance claim," *post* at 7, and we do not hold so in the instant case. See note 11 of this opinion. Such a holding would require us to modify our existing common law, and "[w]hile this Court unquestionably has the authority to modify the common law, such modifications should be made with the utmost caution because it is difficult for the judiciary to assess the competing interests that may be at stake and the societal trade-offs relevant to one modification of the common law versus another in relation to the existing rule." *Woodman v Kera LLC*, 486 Mich 228, 231; 785 NW2d 1 (2010). Contrary to the partial dissent's contention, just because the parties and the Court assumed, without deciding, that knowledge is an element of a nuisance claim in *Wendt v Village of Richmond*, 164 Mich 173; 129 NW 38 (1910), does not mean that if this Court today expressly held that knowledge is an element of a nuisance claim this would not constitute a modification of our existing common law. Moreover, given that the parties themselves have not even asked that the common law be modified by adding the element of knowledge (indeed, defendants have actually argued that "knowledge of a nuisance is irrelevant for purposes of liability"), we are not prepared to "assess the competing interests that may be at stake and the societal trade-offs relevant" to such a modification of the common law. *Woodman*, 486 Mich at 231. We recognize that plaintiff and defendants (at least until they filed their application for leave to appeal with this Court) assumed that knowledge is an element of a nuisance claim. However, this does not change the fact that neither party has argued that we should modify the common law to add a knowledge requirement or has "assess[ed] the competing interests that may be at stake and the societal trade-offs relevant to [such a] modification of the common law." *Woodman*, 486 Mich at 231. One would think that if it were so important for this Court to add knowledge as an element, defendants, who have the most to gain by the addition of this element, would have argued in support of this addition. But, instead, defendants argued that "knowledge of a nuisance is irrelevant for purposes of liability." In light of these circumstances, we exercise "the utmost caution" in recognition of the fact that we are in no position to "assess the competing interests that may be at stake and the societal trade-offs relevant to [the partial dissent's proposed] modification of the common law." *Id*.

property. And even the treatise specifically relied on by the Court of Appeals for its "ownership or control" rule does not stand for the proposition that ownership alone can give rise to liability where someone other than the owner is exercising control over the property.

In the instant case, defendants merely own the property. It is undisputed that they have never possessed or exercised any control over the property. They have not even visited the property in more than a decade. They have no contact with the person who is in actual possession of the property and who is exercising control over that property. Defendants also had nothing to do with the horse that caused the accident in this case or with any other horse on the property. They did not own, possess, or control the horse. Indeed, they did not even know that Daniel Truman owned the horse. Although Marilyn Truman testified that she received two or three telephone calls from people looking for Daniel Truman because his animals were loose, she testified that she received these calls no later than 2000-- at least 10 years before the accident. Not only did none of the neighbors testify that they had *ever* called defendants about the escaped animals, but most of these neighbors, as well as the animal-control officer, actually testified that they *never* called defendants about such animals. Thus, there is no evidence of any kind that defendants knew or had reason to know that Daniel Truman's animals were escaping the property when the accident happened in 2010.[11] Because defendants did not control or

---

[11] We speak of knowledge not because it is an element of a nuisance action in this state, because it is not, see note 10 of this opinion, but only because defendants' *lack* of knowledge is relevant evidence in this case of defendants' lack of control or possession of the property, which *is* an element of a nuisance action. See *Wagner*, 186 Mich App at 163 ("A defendant held liable for the nuisance must have possession or control of the

12

possess the property or the horse, there is no basis on which to impose tort liability on

defendants for a public nuisance.

As explained by the trial court:

> The facts in this case are that the property in question was under the possession and control of Daniel Truman. That while Robert and Marilyn Truman held fee title to that property, it was something more in the nature of a security interest than active ownership. There's no evidence to show that they actively managed, supervised, maintained, possessed or controlled the subject property. To the contrary, all the evidence shows that possession and control of the premises was vested in Daniel Truman. The Plaintiff points to language in a mortgage on the subject premises that's clearly regulating the relations as between the bank and Robert and Marilyn Truman. It doesn't constitute any sort of admission by them that they were actually controlling the property as opposed to having the right to control it in relation to the bank, that right being something that they had passed along to Daniel Truman from the get go in this transaction it appears.
>
> *   *   *
>
> Robert and Marilyn were not in possession of the subject property. They didn't control the subject property. Therefore, there's no nuisance liability that can be attached to them with respect to this land, and the Court likewise must grant summary disposition . . . .[12]

---

land."). That is, the fact that defendants did not even know that Daniel Truman owned a horse, or that animals were still getting loose from the farm operated by Daniel Truman, suggests strongly that they were also not in possession of, or exercising control, over the farm because had they been, they likely would have known about the horse and they likely would have known that animals were still escaping from the farm. See MRE 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). It should not be viewed as remarkable that a lack of *knowledge* of some occurrence may be relevant evidence of a lack of *control* with regard to the conditions that underlie that occurrence. This, of course, is not to say that evidence of knowledge or the lack thereof is dispositive evidence of control or the lack thereof.

[12] Unlike the partial dissent, we do not believe that there is a genuine issue of material fact in this case concerning the issue of control. Although the facts cited by the partial

13

"[T]he party presumptively responsible for a nuisance upon the leased premises is the tenant," *Samuelson*, 49 Mich at 171, for the obvious reason that "the man in possession is in a position of control, and normally best able to prevent any harm to others," *Merritt*, 407 Mich at 552 (quotation marks and citation omitted). In this case, Daniel Truman was the "man in possession" of the property, and thus he was the one "best able to prevent any harm to others." Given that it appears that defendants "resign[ed] all charge and control over [the property]," *Samuelson*, 49 Mich at 173, to Daniel Truman, Daniel Truman, rather than defendants, is the one exclusively responsible for the alleged public nuisance he created on the property.[13]

---

dissent-- that defendants are the title owners of the property, that they loaned money to Daniel Truman so that he could buy out his ex-wife's interest in the property, that they maintained insurance on the property, and that they took out a mortgage on the property that included a duty to maintain the property-- suggest strongly that defendants may have had a right to exercise control of the property, they do not suggest that defendants actually exercised control over the property, which remains the dispositive issue. See *Merritt*, 407 Mich at 554 (stating that a co-owner of land cannot be held liable when he or she has not "exercise[d] her right to possession and control over the property" because "when one co-owner of land cedes possession and control of the premises to her co-owners, the law is satisfied to look to those co-owners actually in control for liability for injuries to third persons").

[13] Because in this case someone other than defendant title owners was in possession of and exercising control over the property, it is unnecessary to address whether an absentee landowner *could* be held liable for a nuisance where *no one* is in possession of or exercising control over property. We simply hold that when someone other than the landowner *is* in possession of property, is exercising control over the property, and is the one who created the nuisance, that person, rather than the landowner, is the one liable for the public nuisance.

14

## IV.  CONCLUSION

For these reasons, we hold that title owners of real property cannot be held liable for a public nuisance that arose from that property, when someone other than the title owners is in actual possession of the property, is exercising control over the property, and is the one who created the alleged nuisance.  Therefore, we reverse that portion of the Court of Appeals' judgment that held to the contrary and reinstate the trial court's order granting defendants' motion for summary disposition.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack

# STATE OF MICHIGAN

## SUPREME COURT

DIANE K. SHOLBERG, as Personal
Representative for the Estate of Terri A.
Sholberg,

   Plaintiff-Appellee,

v             No. 146725

ROBERT TRUMAN and MARILYN
TRUMAN,

   Defendants-Appellants,

and

DANIEL TRUMAN,

   Defendant.

_____

CAVANAGH, J. (*concurring*).

  I agree with the majority's result for the reasons stated in the conclusion section of the opinion. Defendants are entitled to summary disposition because they were not in possession of the property, did not have control over the property, and did not create the alleged nuisance.

             Michael F. Cavanagh

## STATE OF MICHIGAN

## SUPREME COURT

DIANE K. SHOLBERG, as Personal
Representative for the Estate of Terri A.
Sholberg,

      Plaintiff-Appellee,

v                                                              No. 146725

ROBERT TRUMAN and MARILYN
TRUMAN,

      Defendants-Appellants,
and

DANIEL TRUMAN,

      Defendant.

_____

VIVIANO, J. (*concurring in part and dissenting in part*).

I concur with the majority that defendants Robert and Marilyn Truman are entitled

to dismissal because they are not liable for the nuisance at issue. I write separately

because I disagree that this case can be decided as a matter of law on the issue of

defendants' control over the land from which the nuisance arose. But I would reach the

same result because I believe that defendants' lack of knowledge of the nuisance provides

an alternative basis for dismissal.

In our order directing oral argument on defendants' application for leave to appeal,

this Court directed the parties to address "whether, and under what circumstances, a

property owner who is not in possession of the property and does not participate in the

conduct creating an alleged nuisance may be liable for the alleged nuisance."[1]  I believe that the answer to this question is best stated in 58 Am Jur 2d, Nuisances, § 95, which recognizes a requirement to show both control and knowledge before imposing liability for absentee owners, like defendants: "A person is liable if he or she knowingly permits the creation or maintenance of a nuisance on premises of which he or she has control . . . even though such person is not physically present, such as where he or she is an absentee owner."  Applying that rule here, I believe that there is a question of fact whether defendants, even though absentee owners, retained sufficient control over the land to be held liable for the alleged nuisance.  But I would hold that summary disposition in their favor was proper because they had no knowledge of the nuisance on the premises.

## I. CONTROL

I agree with the majority that "control is required in order to hold a defendant liable for a nuisance . . . ."[2]  As the majority also appears to recognize, control over the property may be established "either through ownership or otherwise."[3]  However, because control may be established through proof of ownership, I disagree with the

---

[1] *In re Sholberg Estate*, 494 Mich 867 (2013).

[2] *Ante* at 8.  See 58 Am Jur 2d, Nuisances, § 91, p 640 (stating the general rule that "dominion and control over the property causing the harm is sufficient to establish nuisance liability"); see also 58 Am Jur 2d, Nuisances, § 95, p 643("A party who has no control over the property at the time of the alleged nuisance cannot be held liable therefor.").

[3] 58 Am Jur 2d, Nuisances, § 95.  See *ante* at 9-10.

2

majority that defendants cannot be liable as a matter of law on the ground that they "merely own[ed] the property."[4] Instead, I believe that there is a question of fact regarding the extent to which defendants retained control and responsibility over the property.

There is evidence that someone other than defendants was in active control of the subject property. As the majority notes, Daniel Truman paid the property taxes, and defendants have not visited the property in more than a decade or maintained contact with Daniel Truman. Further, defendants have not profited from the farm and have not been involved in any aspect of Daniel Truman's management of the farm. On the other hand, contrary facts were adduced that could support a finding that defendants retained sufficient control over the premises to be liable for nuisance: (1) defendants hold sole title to the property by means of a warranty deed executed by Daniel Truman's ex-wife in 1989; (2) defendants supplied the financing for Daniel Truman to buy out his ex-wife's interest in the land;[5] (3) defendants maintained insurance on the property at the time the

---

[4] *Ante* at 12. Although I agree that ownership may not be dispositive of control in some cases (for example, when control is ceded by means of a lease or land contract), I cannot agree with the more general assertion that proof of ownership will never be sufficient to establish control. Rather, I believe that in many cases proof of ownership will be sufficient to establish control because the title owner typically has the right to control and dispose of the property. See Taylor et al, Michigan Practice Guide: Torts, § 1:816 (2004) ("A landowner will usually have sufficient control to be liable for a nuisance[.]"); *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 348; 820 NW2d 242 (2012) (stating that " 'title,' is defined . . . as '[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property' ").

[5] Although Robert Truman allegedly had a land contract drafted, there is no evidence of that document in the record, and Robert Truman and Daniel Truman testified that the document was never executed.

3

accident took place; (4) defendants took out a mortgage on the property in March 2010;[6] and (5) the terms of that mortgage required defendants to maintain the property and prohibited them from permitting a nuisance on the property, abandoning the property, or leaving it unattended.

Given the foregoing facts, I believe that the fact of title ownership—when coupled with defendants' financial leverage over Daniel Truman, their insurance interest, and the commitments they made in the 2010 mortgage—created a genuine issue of material fact regarding the degree of control that defendants retained over the property.[7] In my view,

---

[6] In his deposition, Robert Truman claimed that he actually intended to take a mortgage on a different parcel of land that he owned on Stutsmanville Road. He asserted that the fact the mortgage was taken on the 5151 Stutsmanville Road property was an error at the bank. While this alleged error could refute that defendants had control over the property by means of the mortgage agreement, I believe that the import of the written agreement and credibility of Robert Truman's statements should be resolved by the trier of fact.

[7] It is the primary obligation of a landowner to keep his premises from becoming a public nuisance. See *Kern v Myll*, 80 Mich 525, 530-531; 45 NW 587 (1890); see also *Alabama ex rel Bailes v Guardian Realty Co*, 237 Ala 201, 205-206; 186 So 168 (1939). In this regard, "[a]n owner of property on which a nuisance is being conducted may be made a party defendant, along with the one conducting the nuisance." 58 Am Jur 2d, Nuisances, § 326, p 822; see 58 Am Jur 2d, Nuisances, § 94, p 642. Therefore, the current question in this case is not, as the majority suggests, whether Daniel Truman was responsible for the nuisance, but whether defendants may *also* be liable as landowners who retained a sufficient right to control the land to abate the nuisance.

The majority relies on *Musser v Loon Lake Shores Ass'n*, 384 Mich 616, 622; 186 NW2d 563 (1971), for the proposition that "a person is liable only as he participates in an activity giving rise to a tort." However, that case, like many of the cases the majority cites, is distinguishable because it involved a premises liability claim, which is legally distinct from a nuisance claim. Under nuisance law, a party may be liable when it owned and controlled the property, even if that party did not actually create the nuisance. See *Radloff v Michigan*, 116 Mich App 745, 756-759; 323 NW2d 541 (1982). Further, the majority relies on *Merritt v Nickelson*, 407 Mich 544, 554; 287 NW2d 178 (1980), another premises liability case, for the proposition that the actual exercise of control over

4

these facts evidence that defendants may have been more than "mere landowners."[8]

Thus, I do not believe that we can decide as a matter of law that plaintiff has provided sufficient evidence to survive summary disposition on the issue of control.

## II. KNOWLEDGE

Despite the foregoing, I agree with the majority that defendants are entitled to summary disposition because even if defendants had control over the land, their lack of knowledge of the alleged nuisance provides an alternate basis for dismissal.

---

the property is required to impose nuisance liability. In that case, unlike his co-owner, the invitor was liable because he alone exercised control over the land, and by doing so assumed a duty of care to those he invited to the land. See *Merritt*, 407 Mich at 551, 553-554. But under nuisance law, a plaintiff need only show that the landowner had the *right to control* the property. See *Randall v Delta Charter Twp*, 121 Mich App 26, 34-35; 328 NW2d 562 (1982) (holding that the plaintiff failed to state a nuisance claim because he "failed to allege that [the defendant] . . . had any interest in or *right of control* over the property") (emphasis added).

The majority opinion holds that absentee owners who, by virtue of their absence, have not *actually* exercised control over the property during the relevant time period are not liable for nuisance. I disagree with that holding because I do not believe that nuisance liability for absentee landowners turns on the actual *exercise* of control. Rather, even if an absent landowner does not actually exercise control over the property, the landowner may still be liable for nuisance when he or she retains a right to control the property sufficient to abate the nuisance. See e.g., *Maynard v Carey Constr Co*, 302 Mass 530, 533; 19 NE2d 304 (1939).

[8] If defendants could show that, despite their status as title owners, they ceded control through a properly executed lease or land contract, then summary disposition may well have been in order. No party alleges that a landlord-tenant relationship existed in this case; however, defendants do assert that they sold the property to Daniel Truman on a land contract. Even so, absent a written agreement, and in light of the contrary evidence, I cannot conclude that a land contract existed as a matter of law. See *Cowles v Bank West*, 476 Mich 1, 5, 37; 719 NW2d 94 (2006) (stating that summary disposition under MCR 2.116(C)(10) is improper where material questions of fact exist).

5

The general rule in nuisance law is that "[a] landowner is subject to liability for a nuisance created by the activity of a third party on the land if the owner *knows, or has reason to know*, that the activity is causing, or will cause, an unreasonable risk of nuisance, and the landowner consents to the activity or fails to exercise reasonable care to prevent the nuisance."[9]  And, as noted above, this liability extends to absentee owners, like defendants, if they knowingly permit a nuisance: "A person is liable if he or she *knowingly permits* the creation or maintenance of a nuisance on premises of which he or she has control . . . even though such person is not physically present, such as where he or she is an absentee owner."[10]

Unlike some other jurisdictions, this Court has never explicitly held that knowledge is a required element of a nuisance claim.[11]  However, requiring knowledge is

---

[9] 58 Am Jur 2d, Nuisances, § 96, p 643 (emphasis added).  See also 66 CJS, Nuisances, § 121, pp 702-703 ("[T]he bare fact of ownership of real property imposes no responsibility for the nuisance unless the owner . . . has knowledge of the nuisance on his or her property.")

[10] 58 Am Jur 2d, Nuisances, § 95, p 643 (emphasis added).  The knowledge requirement also applies to possessors and lessors.  See *Wagner v Regency Inn Corp*, 186 Mich App 158, 163-164; 463 NW2d 450 (1990), citing 4 Restatement Torts, § 838, p 157 ("A possessor of land upon which a third person carries on an activity that causes a nuisance is subject to liability for the nuisance if . . . the possessor *knows or has reason to know* that the activity is being carried on . . . .") (emphasis added); 4 Restatement Torts, 2d § 837, p 152 ("A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land . . . if . . . at the time of the lease the lessor . . . *knows or has reason to know* that it will be carried on, and (b) he then *knows or should know* that it will necessarily involve or is already causing the nuisance.") (emphasis added).  See also 58 Am Jur 2d, Nuisances, § 97, p 644.

[11] See, e.g., *Tennessee Coal, Iron & R Co v Hartline*, 244 Ala 116, 124; 11 So 2d 833 (1943) ("[Land]owner may be liable for the continuance of a nuisance *when he has knowledge thereof* although it was created by the act of an unauthorized person.") (emphasis in original); *Louisville & N R Co v Laswell*, 299 Ky 799, 805; 187 SW2d 732

6

not a novel concept in our common law.  More than a century ago in *Wendt v Village of Richmond*,[12] the plaintiff brought a nuisance claim against the defendant village, alleging that the defendant had knowingly permitted sewage to collect in water run off ditches in the vicinity of the plaintiff's home.  On appeal, although denying any knowledge of the condition, the defendant conceded that "[i]t is a rule of law that one who does not knowingly or wilfully create a nuisance, but passively permits one to exist after knowledge thereof," can be liable after notice and reasonable opportunity to abate the nuisance.[13]  And this Court approved this rule when it confirmed the sufficiency of the trial court's instruction on knowledge, which provided, "[I]f the defendant caused, *or knowingly permitted*, these things to be collected by its ditches and conveyed to plaintiff's premises . . . it would be liable, after the lapse of a reasonable time within which to remedy the condition . . . ."[14]  Thus, the unremarkable proposition that knowledge is required to impose nuisance liability does not appear to be inconsistent

---

(1945) ("A person is liable if he knowingly permits the creation or maintenance of a nuisance on his premises."); *Rockport v Rockport Granite Co*, 177 Mass 246, 255; 58 NE 1017 (1901) ("[A]n owner is bound to see to it that his land is so managed by persons brought on to it by him, as not to cause injury to others" and if "he suffers [a nuisance] to remain there, he is liable to any one injured thereby, at any rate when he knows of the existence of the thing which constitutes the nuisance."); *Grant v Louisville & N R Co*, 129 Tenn 398, 404; 165 SW 963 (1914) ("The owner cannot be liable in respect to . . . a nuisance [on his land] unless he has some knowledge of it . . . .").

[12] *Wendt v Village of Richmond*, 164 Mich 173; 129 NW 38 (1910).

[13] *Id.* at 177.  See also *Tennessee Coal*, 244 Ala at 121.

[14] *Wendt*, 164 Mich at 175, 182.

with, or a modification of, Michigan's common law, but merely the recognition of an established requirement.[15]

Indeed, knowledge is a crucial element in circumstances in which a third party creates a nuisance. When it is demonstrated that a landowner retains the legal right to resume control over the subject property *and* has knowledge of a nuisance created by a third party, that owner is bound to use all reasonable means within his or her power to abate the nuisance.[16]

In this case, however, as even the majority acknowledges, there is no evidence that defendants knew or should have known about the elopements. Contrary to the Court of Appeals' assertion, there is no evidence that defendants were aware of the farm animals' tendency to escape in the 10 years before the accident. Therefore, even if they had the

---

[15] Suffice it to say, I disagree with the majority's assertion that recognizing a knowledge requirement would require a modification of our common law. The rule that knowledge is required to impose liability on landowners for a nuisance created by a third party appears to be the unanimous position of the courts and commentators that have addressed the issue, including our Court in *Wendt* and the Court of Appeals in *Wagner*. The majority also asserts that "the parties themselves have not even asked that the common law be modified by adding the element of knowledge . . . ." *Ante* at 11 n 10. However, plaintiff has never explicitly asked that the common law be modified to add a knowledge element because her position since the inception of this case has been that knowledge is already a recognized element of nuisance liability. Defendants did not disagree with this position until their briefing before this Court. Before reaching this Court, defendants consistently accepted that knowledge was required. For example, in their Court of Appeals brief, defendants conceded that "a title holder can only be held liable for a nuisance if he knows about it and fails to exercise reasonable care," citing *Wagner*, 186 Mich App at 163-164.

[16] See *Maynard*, 302 Mass at 533 (stating that when the defendant landowner allowed a third-party to use the land, "after . . . notice [of the nuisance] it became the duty of the defendant, as . . . [the] owner who could resume control at will, to use all reasonable means within its power to abate the nuisance").

8

requisite control over the land, defendants cannot be liable because they had no knowledge of the nuisance.[17]

## III. CONCLUSION

In sum, although I agree with the majority that control is the critical inquiry for nuisance liability, I disagree that dismissal is warranted on that ground when defendants' ownership of the property, taken together with other facts in the record, creates a question of fact on the issue of control. I would conclude that summary disposition was nevertheless appropriate on the alternative basis that there is no genuine issue of material fact on the issue of knowledge, which is a necessary element for nuisance liability.

David F. Viviano

---

[17] I disagree with the majority's assertion that knowledge is relevant evidence of control. A defendant who creates a nuisance will most likely have both knowledge and control of the nuisance. However, when, as in this case, a third party creates a nuisance, whether a defendant landowner has knowledge has no bearing on whether the landowner has sufficient control to abate the nuisance.